REBELSKY v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

**Railroads:** INJURY TO BRAKEMAN: CONTRIBUTORY NEGLIGENCE. Plaintiff was middle brakeman on defendant's freight train. He saw a car in bad order attached to the rear of the train by means of a chain, and knew that it was so attached because the draw-bar was gone. The absence of the draw-bar permitted the bad-order car to come so near to the car to which it was attached as to crush a person standing between. The bad-order car afterwards became detached from the train, and plaintiff went back to assist in attaching it again. When he passed the rear of the train it was

moving slowly forward, and the bad-order car, which was about fifteen feet from the train, was being pushed along slowly toward the train by another employe. Plaintiff took hold of the side of this car, at the end nearest the train, and helped push it along. After moving along a few steps, he went between the bad-order car and the train to adjust the chain, and very soon he was caught between the car and the train, which meantime had come to a stop, and he was seriously injured. *Held* that plaintiff was himself guilty of negligence contributing to the injury, and that he could not recover of the defendant on account thereof.

*Appeal from Clinton District Court.*—HON. A. HOWAT, Judge.

FILED, JANUARY 23, 1890.

ACTION to recover damages for a personal injury to the plaintiff, alleged to have been caused by the negligence of the defendant in the operation of its railroad, without fault or negligence on the part of the plaintiff contributing thereto. The case being on trial to a jury, and the plaintiff having introduced all his evidence, the defendant moved the court to instruct the jury to find for the defendant, which motion was sustained, and verdict accordingly. The plaintiff moved for a new trial on the grounds that the court erred in sustaining defendant's motion, and so instructing the jury, which motion for new trial was overruled, and judgment entered against plaintiff on the verdict; to all of which plaintiff excepted, and from which he appeals, assigning as errors the sustaining of defendant's motion instructing the jury to find for defendant, overruling plaintiff's motion for a new trial, and entering judgment on said verdict in favor of the defendant.

*Walker Bros.* and *Robert T. T. Spence*, for appellant.

*Hubbard & Dawley*, for appellee.

GIVEN, J.—I. The discussion rests entirely upon the action of the court in sustaining defendant's motion, and instructing the jury to find for the defendant. The grounds of the motion were that the uncontradicted

evidence shows that the plaintiff was guilty of negligence directly contributing to his injury; that he voluntarily assumed to be between the cars when he did, and at his own risk; and that there is no evidence that the injury was caused by any negligence of the defendant, or its agents, or its employes.

The facts appearing from the testimony are substantially as follows : In the forenoon of March 31, 1888, freight train No. 18, on the defendant's line of road between Belle Plaine and Clinton, arrived at the station of Stanwood, on its way east. On its arrival there, defendant's agent at that station handed the conductor of the train a telegraphic order to take on a "bad-order" car and haul it to Clinton, where the company had repair-shops, for repairs. The plaintiff, Frederick Rebelsky, who was middle brakeman on this train, took this order in duplicate from the conductor, who told him it was an order to take a bad-order car to Clinton, and went to the rear of the train to give one of the copies to the rear brakeman. While on his way to the rear brakeman, the train pulled up, preparatory to backing it onto the sidetrack, where the bad-order car was standing. The rear brakeman and the plaintiff walked down to the bad-order car; the rear brakeman getting a chain with which to chain it to the rear end of the way-car,—the rear car of the train. After the train had backed down so that the way-car was in position to have the bad-order car chained up to it, the plaintiff was still there, and offered to help the rear brakeman pass the chain around the king-bolt of the bad-order car. The rear brakeman said to him : "Never mind. I will fasten it myself." Then the plaintiff took the other copy of the order to the head of the train and gave it to the engineer. When the bad-order car was secured to the way-car, train No. 18 proceeded east, and arrived at the station of Lowden about noon. On the way from Stanwood to Lowden, the plaintiff rode on top of about the middle car in the train. No. 18 had orders to meet another freight train—No. 29, west-bound—at Lowden;

and, on coming into Lowden, No. 18 came in on the main track and stopped so that the way-car and bad-order car did not clear the switch. No. 29 was standing on the north sidetrack, ready to pull west as soon as the track was clear. When No. 18 stopped, the plaintiff got down off the top of the train, and got into the way-freight car, which was about in the middle of the train, to sort out the way-freight which was destined for Lowden station. While in the car, No. 18 started to pull up a little,—probably to clear the switch so 29 could get out; and, a moment after it started, the plaintiff heard the engine of No. 29 whistle for brakes. He got out of the way-freight car, and went back to see what was the matter, and saw that the bad-order car had become detached from the way-car. No. 18 was moving at a very slow rate of speed when the plaintiff passed the way-car on his way to the bad-order car. The grade of the track was slightly descending from the switch, before mentioned, to the station. Meanwhile a brakeman from train No. 29 had gone over to the bad-order car, and was pushing it east, toward the way-car of No. 18, at a slow rate of speed, which was unknown to plaintiff, and of which no warning had been given. The plaintiff walked towards the bad-order car, and, when he reached the east end of it, it was just moving over the switch; and, when plaintiff passed the way-car of No. 18, the bad-order car was about fifteen feet west of the way-car. He walked along the north side of the track until he came to the northeast corner of the bad-order car. He then faced east, and helped to push the car along toward the way-car of No. 18. After walking east with the car a few steps, he saw the chain which connected the way-car to the bad-order car, and which had been put onto the dead-woods of the bad-order car by the brakeman of No. 29 before he started to push the car, dropping down towards the ground. Without looking to see how far distant the bad-order car was from the way-car of No. 18, and without looking to see whether No. 18 had stopped or not, he stepped in front

of the bad-order car to pick up the chain, fearing, he
says, that the hook in the end of the chain might catch
in the switch rod, and stop the bad-order car.   He took
two or three side steps while in the act of gathering up
the chain; and just as he rose up, with the chain in his
hand, he was caught between the way-car and the bad-
order car.   His collar-bone was broken, and he suffered
the other injuries complained of in his petition.   The
only defect that the bad-order car had was the absence
of a draw-bar from its then east end.   Plaintiff knew
that there was some defect in the coupling apparatus,
but did not know its exact nature.   The draw-bar was
entirely gone, and this was apparent at the slightest
glance.   Plaintiff did not look to see what the nature
of the defect was, though when he stooped down to pick
up the chain his eyes and nose were within six inches of
the defective parts.   When the way-car and the bad-
order car came together, by reason of the absence of a
draw-bar from the bad-order car, the draw-bar of the
way-car slipped in between the dead-woods of the bad-
order car, and allowed the two cars to come so close
together as to crush the plaintiff.   The negligence
charged against the defendant in the petition is, "that
said defendant, at the time said disabled car was
attached, failed to properly attach the same, and was
negligent therein, and by reason thereof said car became
detached at Lowden;" and "that said defendant was
negligent in hauling said disabled car, in its then condi-
tion, in the manner it did."   In support of these charges,
appellant contends that the defendant was negligent in
ordering a bad-order car into that train; that it was neg-
ligently and insufficiently attached; that defendant was
negligent in not notifying plaintiff that the draw-bar
was gone, and in not giving signals ; that the car was
being pushed, and that the train was about to be
stopped.   Appellant also contends that it was his duty
to go in and attempt to take up the chain when and as
he did; that in doing so he had a right to, and did,
believe that the draw-bar was so in place that it would

not be extra hazardous to do so; and therefore he was not guilty of negligence contributing to his injury.

II. To enable the plaintiff to recover, he must show that the defendant was guilty of negligence in one or both of the respects charged in the petition; that the negligence charged, of which the defendant was guilty, was the proximate cause of his being injured to his damage; and that he was free from negligence contributing to such injury. "If the facts are such that but one conclusion can reasonably be drawn from them, it is the province of the court to determine that conclusion. But, if different minds might reasonably reach different conclusions from them, the parties are entitled to have the question determined by the jury." *Whitsett v. Railway Co.*, 67 Iowa, 159, and cases therein cited. There being no counter or conflicting testimony, we are to take that introduced as true, and say whether different minds might reasonably reach different conclusions therefrom. That the defendant might haul its disabled car from where it was to the shops for repairs at a proper time, and in a proper manner, is not questioned; nor is it questioned but that it was proper to haul it in daytime, and in a freight train. The draw-bar being out, a chain was used in attaching the bad-order car to the rear of the train. There is no testimony to show that it should have been attached elsewhere in the train, or that there is any better or safer appliance known for making couplings in such cases than a chain such as was used. There is nothing to show how the coupling was made, or that it could have been made in any different way. The fact that the chain came loose indicates that the attachment was not perfect, but there is nothing to show that it could have been more so. The chain was used to meet an emergency; and, for aught that appears, it was the best known appliance, and was used in the best known way to meet that emergency. The defendant had notified the plaintiff that it was a bad-order car. He knew that a chain was used in attaching it, and consequently must have known that the usual appliance

for coupling was out of order. The absence of the draw-bar was obvious, and with his attention called to it, as it had been, by the order and the use of the chain, could not have escaped his notice when he went in to pick up the chain, if he had exercised the slightest care. Neither the engineer of this train, nor the man that was pushing the disabled car, had any reason to expect that the plaintiff was going between the cars when and as he did, and therefore had no reason to give signals that the train was to be stopped, or that the bad-order car was being pushed. The plaintiff knew the bad-order car was moving towards the train, and that the train might be stopped so they would come together. By the exercise of care he would have known that the train had stopped, and consequently the danger. The only reasonable conclusion that can be drawn from this testimony is that it does not even tend to show that the defendant was negligent in either of the respects charged, and fails to show that the plaintiff was free from negligence on his part. The judgment of the district court is

AFFIRMED.