# I. F. FORCE HANDLE COMPANY v. HISEY.

[No. 7,152. Filed November 23, 1911. Rehearing denied January 25, 1912. Transfer denied January 23, 1913.]

1. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Sufficiency.*—In a servant's action for personal injuries, a complaint alleging that plaintiff was employed as a common laborer in and about defendant's factory, and that while so employed, and while he was engaged in his duties as such common laborer, and while he was so standing in the yards of said defendant, he was injured through the negligence of defendant, is not insufficient on the ground that it does not show that plaintiff at the time of his injury was acting in the line of his duty as an employe of defendant, or that defendant owed him any duty, since the word "duties" refers to any work which his employment required him to perform as common labor, and the word "so," in the allegation that the injury occurred while he was "so" standing in the yards, refers back to the statement that he was engaged in his duties. p. 239.

2. MASTER AND SERVANT.—*Injury to Servant.—Place of Work.— Duty of Master.—Complaint.—Necessary Allegations.*—Where the relation of master and servant exists, the law imposes on the master the general duty to furnish the servant a reasonably safe place in which to perform his work, so that a complaint in a servant's action for personal injuries, showing that the relation of master and servant existed at the time of the injury and that the servant was performing the work which he was employed to do, need not specifically aver that the masterial duty was owing to him; but the allegation of facts showing the existence of such duty is necessary where the complaint discloses that the servant's employment required him to do a particular work in a particular place, and that at the time of the injury he was not in such place, but in a different one where the performance of the particular work could not have called him. p. 240.

3. MASTER AND SERVANT.—*Injury to Servant.—Existence of Relation.—Complaint.*—The statement in a complaint for injuries to a servant, that plaintiff was in the employ of defendant as a common laborer, fixes the relation of master and servant, and sufficiently shows the existence of the legal duty owing to plaintiff by defendant to use ordinary care to furnish him a reasonably safe place in which to work, and reasonably safe appliances with which to work. *South Bend, etc., Plow Co.* v. *Cissne* (1905), 35 Ind. App. 373, is overruled. p. 242.

4. TRIAL.—*Verdict.*—*Answers to Interrogatories.*—On a motion for judgment on answers to interrogatories notwithstanding the general verdict, all reasonable intendments are taken in favor of the general verdict, and no intendments are made in favor of the moving party, and, in order to grant such motion, the special findings must be in such conflict with the general verdict that the two cannot be reconciled.  p. 242.

5. MASTER AND SERVANT.—*Injury to Servant.*—*Verdict.*—*Answers to Interrogatories.*—In an action by a servant for injuries sustained by the breaking of a defective link in a chain used by defendant in moving a car, the general verdict for plaintiff amounted to a finding that the defect would have been apparent to one making a reasonably careful inspection of the chain, and one with knowledge of which defendant was chargeable, and answers to interrogatories showing that the link was defective because of imperfect weld, that a slight darkness in it at one point of the weld was the only thing to indicate any imperfections in the link or to distinguish its appearance from any other link in the chain, are not inconsistent with such general verdict, since it cannot be said therefrom that an inspection would have been useless, nor that the defect was a hidden one which defendant could not have discovered by the exercise of proper care, nor that the accident was inevitable and one which defendant could not anticipate.  p. 243.

6. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.* —*Instructions.*—Where the complaint, in a servant's action for personal injuries, alleged facts sufficient to constitute a cause of action and showing nonassumption of risk, an instruction that if plaintiff has proved the material allegations thereof by a preponderance of the evidence, he is entitled to a verdict, provided the evidence does not show that he was guilty of contributory negligence, was not erroneous on the ground that it omitted the question of assumption of risk by plaintiff, and especially where the jury was fully informed on that subject by other instructions.  p. 246.

7. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.* —*Negligence of Master.*—*Instructions.*—An instruction, that while a servant assumes the ordinary risks incident to his master's business, in which he is engaged, he does not assume those risks occasioned by the master's negligence, unless such risks were occasioned by defects of which the servant had knowledge, or of which he is chargeable with knowledge, is correct.  p. 246.

8. MASTER AND SERVANT.—*Injury to Servant.*—*Knowledge of Defect.*—*Instructions.*—Where the complaint in a servant's action for personal injuries, caused by the breaking of a chain, charged that the chain was defective and also that it was not sufficient

I. F. Force Handle Co. *v.* Hisey—52 Ind. App. 235.

to stand the strain to which it was put and for which it was used, and the law governing the necessity of showing knowledge of the danger on the master's part was sufficiently stated to the jury, an instruction that if plaintiff has proved by a preponderance of the evidence either of such allegations, and if under the evidence he is otherwise entitled to recover, and was not guilty of contributory negligence and had not assumed the risk, he has made a case, is not open to the objection that the element of knowledge or means of knowledge on defendant's part is ignored. p. 247.

9.  TRIAL.—*Instructions.—Construction.*—Instructions should all be construed together and not separately. p. 247.

10. TRIAL.—*Instructions.—Assumption of Facts.*—An instruction in a personal injury action, that if the jury finds for plaintiff, it becomes its duty to assess his damages at such sum as the evidence relating thereto shows him to be entitled, not exceeding the sum of $15,000, and that the elements of damage which the jury may consider consist of all the effects of the injury complained of, if any, as shown by the evidence relating thereto, is not objectionable as assuming the truth of facts in issue, or that certain facts have been proved. p. 248.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Edward F. Hisey against the I. F. Force Handle Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson, Stannard & Howard* and *Jewett & Jewett,* for appellant.

*Stotsenburg & Weathers* and *George H. Voigt,* for appellee.

IBACH, J.—This is a suit commenced in the Floyd Circuit Court by appellee against appellant, a corporation operating a factory at New Albany, Indiana, to recover damages for personal injuries alleged to have been sustained while in its employ, and caused by its negligence. On request of appellee, the venue was changed to Clark county.

The amended complaint is in a single paragraph, and, omitting the formal parts, states "that on the 23d day of June, 1905, the plaintiff was in the employ of said defendant as a common laborer, in and about its factory; that on said day, while this plaintiff was so employed, and while he

was engaged in his duties, as such common laborer, and while he was in the yards of said defendant, this plaintiff was injured by the negligence of the defendant as hereinafter set out; that on said date, and prior to the time of this plaintiff's injury, said defendant rigged up a rope, which was fastened at one end to a freight car standing on a switch controlled by the defendant, and the other end was attached to the drum of the engine; that said rope about the middle of its length ran through a pulley or tackle block fastened by a chain to a post, in such a way as to make said rope in the shape of a right angle, and in such way as to put the strain of said engine and of the load attached to the other end of the rope, when said engine was started, on the chain; that said rope was so rigged for the purpose of moving said car on said switch; that said chain, with which said pulley was fastened to said rope, was old, rusted, defective and insufficient to stand said strain, all of which was then and there well known to the said defendant in ample time to either repair said chain, or furnish another and sufficient one in its place, or to warn this plaintiff of the danger, but notwithstanding the same was well known to the defendant, said defendant then and there negligently used the said chain for said purpose; that the defective and insufficient condition of said chain was unknown to this plaintiff; that while said plaintiff was so standing in the yards of said defendant's factory, said defendant started said engine, thereby tightening the said rope, and thereupon said chain, by reason of and as a result of said defective condition suddenly and without any warning, broke and said chain, rope and block, on account of being released, were thrown with great force and violence against and around the body of the plaintiff, causing the plaintiff thereby to be thrown with great force and violence to the ground.'' It is further averred that on account of his said injuries, caused wholly by defendant's negligence, plaintiff is permanently crippled.

A demurrer to the complaint for want of facts was over-

ruled, to which ruling appellant excepted. The cause was put at issue by an answer in denial, and a further answer in which was pleaded the statute of limitations. Trial by jury resulted in a general verdict for appellee in the sum of $5,000. The jury also returned special findings of facts in the form of answers to interrogatories submitted to it. Appellant moved for judgment on the answers to interrogatories, which motion was overruled, likewise its motion for a new trial, and judgment was rendered for appellee on the general verdict.

Errors relied on for reversal are that the complaint does not state facts sufficient to constitute a cause of action, overruling the demurrer to the amended complaint, overruling the motion for judgment on the answers to interrogatories and special findings of facts notwithstanding the general verdict, and overruling the motion for a new trial.

Appellant's counsel claim that the amended complaint does not state a cause of action, as no facts are alleged showing that appellee at the time he was injured was acting in the line of his duty as an employe of appellant, or that appellant owed him any duty. They argue that the allegation of the complaint on this point, in the following words, is only the conclusion of the pleader: "That on said day, while this plaintiff was so employed, and while he was engaged in his duties as such common laborer, and while he was in the yards of said defendant, this plaintiff was injured by the negligence of the defendant as hereinafter set out." They insist that it is nowhere shown what appellee was doing, all that is alleged as to his employment being that he "was in the employ of said defendant as a common laborer in and about said factory," and that in spite of the later allegation that the accident occurred "while plaintiff was so standing in the yards of said defendant's factory," still the complaint is absolutely silent as to facts showing why he was there. They urge that it is not sufficient to allege in general terms that it was the duty

of a plaintiff or a defendant to do or not to do a certain thing, but that the facts must be alleged from which a duty may be inferred, for, charging that it was the duty of plaintiff or defendant to do a certain thing is the averment of a mere conclusion of law.

But it seems to us that, on a reasonable construction, the complaint in the present case is sufficient. From the allegations objected to by appellant as being general, it appears that appellee was employed as a common laborer in and about appellant's factory, and that at the time he was injured he was engaged in his duties as such in the yards of the factory. Here the word "duties" refers to any work which his employment required him to perform as a common laborer. A later allegation is that the injury occurred while he was "so" standing in the yards, the word "so" seemingly being used by the pleader to refer back to the statement that he was engaged in his duties. It is true that it nowhere appears from a specific allegation what was the particular task embraced under the head of common labor, which appellee was performing.

A complaint by a servant seeking to hold his master liable for an injury received by him on account of the failure on the part of the master to furnish him a safe place in 2. which to work must aver facts which show that at the time he was injured the relation of master and servant existed between them. When such facts appear, the law at once imposes the general duty on the master to furnish to the servant a reasonably safe place in which to perform his work. In addition to this, however, it must be made to appear, from the facts averred, that at the time of his injury he was in a place where the master owed such duty to him. This may be made to appear by an allegation that at the time he received the injury complained of he was actually engaged in the duties to which he had been assigned by his master. So when the allegations of the complaint show that the servant when he received the injury

complained of was performing the work which he was employed to do, this will be held to be a sufficient averment that he was rightfully at the place where he was injured. Where it appears from a complaint that the employment of the servant required him to perform a particular work, and that the performance of such work required him to be in a particular place, if it further appears from such complaint that when he received the injury complained of he was not in that particular place, but in a different one, where the performance of the particular work could not have called him, then such a complaint would not be good unless it contained additional facts showing that the master owed him a duty while at the place where the injury actually occurred. Such is, in effect, the holding in the case of *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 71 N. E. 218, 71 N. E. 660. In the case now under consideration it does not appear that the work which appellee was directed to do compelled him to be in any particular place, and it does not appear affirmatively from the complaint that he was at any place where the work which he was employed to do did not require him to be. It was therefore only necessary in order to show a duty owing by his master to appellee to allege such facts as show that at the time he was injured he was engaged in the work assigned to him by the master. The allegations that appellee was employed as a common laborer in and about appellant's factory, and was engaged in his duties as such in the yards of such appellant, fully show that he was where he had a right to be, for, the place and the character of his work and the reason why he was in the place where he was injured are alleged with sufficient particularity. This holding is supported by the holdings in *Pittsburgh, etc., R. Co.* v. *Rogers* (1910), 45 Ind. App. 230, 87 N. E. 28; *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, 88 N. E. 932; and *Cleveland, etc., R. Co.* v. *Heineman* (1910), 46 Ind. App. 388, 90 N. E. 899.

The statement in the complaint, that appellee was in the employ of appellant as a common laborer, fixes the relation of master and servant, and thus sufficiently shows the existence of a legal duty owed to appellee by appellant, namely, to use ordinary care to furnish him a reasonably safe place in which to work, and reasonably safe appliances with which to work. As the place of his employment is alleged to be in and about his master's factory, his master must use reasonable care to make this place reasonably safe for him. The law imposes this duty on the master, and it is unnecessary specifically to allege its existence in the complaint. We therefore hold the complaint sufficient to withstand demurrer for want of facts.

Appellant's counsel base their argument for the insufficiency of the complaint mainly on the decision in the case of *South Bend, etc., Plow Co.* v. *Cissne* (1905), 35 Ind. App. 373, 74 N. E. 282. On the authority of that case the complaint in the present case would clearly be insufficient to withstand demurrer for want of facts, and in so far as the opinion in the present case is in conflict with the decision in the case of *South Bend, etc., Plow Co.* v. *Cissne, supra,* that case is expressly overruled.

In the case of *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92, the court discussed very fully the general principles governing a judgment on answers to interrogatories notwithstanding a general verdict, and a portion of the opinion in that case was quoted with approval in the case of *Harmon* v. *Foran* (1911), 48 Ind. App. 262, 94 N. E. 1050, 95 N. E. 597. Suffice it to say, that in order to grant a motion for judgment on answers to interrogatories notwithstanding the general verdict, the special findings must be in such conflict with the general verdict that the two cannot be reconciled, that all reasonable intendments are taken in favor of the general verdict, and no intendments are made in favor of the moving party.

The interrogatories and answers thereto show the follow-

ing facts, in substance: There was a post planted in the ground west of the engine, and a chain was maintained around this post, in order that the hook of sheave or pulley could be attached thereto when a car was to be pulled on the railroad track by the engine. The links of the chain were made of ⅝-inch metal. There was one link defective because of an imperfect weld. A rope passed from the engine to the drawbar of the car and through the pulley, and defendant, by using its engine, attempted by pulling on the rope to pull cars on the track. When the power was applied to the rope the chain broke, because of the defective link, the rope struck plaintiff on the legs and caused him to trip and fall. There was no evidence as to whether there was anything in the appearance of the chain before it broke to indicate that the link which gave way was defective. The link was defective because of an imperfect weld, a portion of the inner part of it having failed to unite where the parts of the metal of which it was made lapped one on the other, a portion of the two surfaces having united and a portion having failed to unite. The link which broke was similar in size and form to the other links in the chain, and a slight darkness in color at one point on the weld was all there was in the appearance of the link to indicate that there was any imperfection in it, or to distinguish its appearance from any other link in the chain. The chain had been maintained around the post, for the purpose mentioned, for from eight to nine months prior to June 23, 1905, and had been used during that time at intervals of about twice each month to pull cars on the track. In so doing the defective link had stood the strain. After the chain broke on June 23, its severed parts were reunited by passing a link of one part through the opening in a link of the other part, and inserting an iron pin in the opening of the first mentioned link, and thus reunited, the chain was used to pull cars until the spring of 1907, during which time the chain stood without breaking, even when the

same car was pulled which defendant was attempting to pull when the chain broke on June 23. Plaintiff continued to work for defendant as a laborer from June 23, 1905, until October, 1905, and did not inform defendant at any time that he had sustained any injury by the fall, mentioned in the complaint, until he filed his suit. After quitting defendant's service plaintiff drove a coal cart for several weeks, worked at the veneer mill for several weeks, at the rolling-mills, drove a grocery wagon, handled iron for the Hedgewald Iron Works, worked on a farm for several months, all before the time of filing this suit. The place where plaintiff fell was covered five or six inches deep with sawdust. There was no visible mark on his person to indicate that he had been injured, until an abcess appeared. Plaintiff had a physician, and was at the time of the trial suffering with "Potts disease." Seventy per cent of the cases of Potts disease are caused by tuberculosis; but the medical profession is in doubt as to what is the true cause of the remaining cases of Potts disease. The case from which plaintiff suffered was caused by the injury occasioned by said fall. The chain was strong enough for the purpose for which it was used, with the exception of the one defective link, having no other apparent defect. Plaintiff had suffered with his back for some time prior to June 23, 1905, and supposed his affliction to be rheumatism, his suffering being evidenced by a pain in the left side of his back, and for several weeks in April, 1904, he was confined to his home on account thereof. Defendant did not inspect the chain when it was placed around the post.

We cannot say that these answers are in irreconcilable conflict with the verdict. Some of them are in conflict with each other. Appellee's case hinges on a determination of whether the defect in the link would have been apparent to one making a reasonably careful inspection of the chain, and was a defect with knowledge of which appellant was chargeable. The jury by its general verdict found such

fact for appellee.    The interrogatories and answers bearing on this point are set out below: '' (13) If you answer the foregoing interrogatories in the affirmative, state whether there was anything in the appearance of the chain, before it broke, to indicate that the link which gave way was defective?   A.   No evidence.    (14) If you answer interrogatory No. 13 in the affirmative, then state what there was in the appearance of the chain, before it broke, to indicate that the link which gave way was defective?   A.  No evidence. * * *  (19) If you answer that the link which broke was defective on account of an imperfect weld, state whether a slight darkness in color, at one point on the weld, was all there was in the appearance of the link to indicate that there was any imperfection in the link?   A.   Yes.   (20) If you answer interrogatory No. 19 in the negative, then state what, besides the slight darkness in color, there was in the appearance of the link to indicate that there was any imperfection in the link, or to distinguish its appearance from any other link in the chain?   A.   No other appearance. * * *  (53) Did the defendant inspect the chain when it was placed around the post?   A.   No.   (54) If you answer interrogatory No. 53 in the affirmative, state whether when defendant so inspected the chain there was anything in the appearance of the link open to ordinary observation to indicate that the link which afterwards gave way on June 23d, had the defect in it which caused it to break?   A.   No.''

The answer to No. 19 tends to support the general verdict. Its effect is to nullify the findings of (13), (14) and (54), which are favorable to appellant.   It is clearly set out in finding No. 53 that defendant failed to inspect the chain. In this it was negligent.   Bearing in mind the answer to 19, as to the existence of a small discolored spot on the defective link, we can neither say that such inspection would have been useless, nor that the defect in the chain was a hidden one which defendant could not have known by the exercise of proper care, nor that the accident was inevitable

and one which defendant could not anticipate. Such being the case, the general verdict must stand, and the trial court committed no error in overruling the motion for judgment on answers to interrogatories.

Appellant assigns among the reasons for a new trial, the giving of instructions Nos. 1, 9, 13 and 16 at appellee's request. Instruction No. 1 is as follows: "If the plaintiff has proved the material allegations of his amended complaint by a preponderance of the evidence, then he is entitled to a verdict against the defendant for not exceeding $15,000, provided of course, the evidence does not show the plaintiff to have been guilty of contributory negligence." Appellant claims this instruction to be defective because omitting the question of assumption of risk by appellee. We have said the amended complaint contains facts sufficient to constitute a good cause of action, the facts alleged show a nonassumption of risk, and the expression "the material allegations of the amended complaint" included the nonassumption of risk, which must have been proved before the jury could find for appellee under this instruction. The instruction was not erroneous, and the jury was fully informed as to assumption of risk by other instructions given.

Instruction No. 9 is as follows: "While a servant assumes the ordinary risks incident to his master's business, in which he is engaged, he does not assume those risks occasioned by the master's negligence, and in this case, I instruct you that while the plaintiff assumed the ordinary risks incident to the work he was called upon to perform, he did not assume the risks, if any such, arising from the negligence of the defendant, unless such risks were occasioned by defects of which the plaintiff had knowledge, or of which he is chargeable with knowledge."

Appellant's counsel state in their brief that their conception of the law is that an employe assumes not only the risks ordinarily incident to the business, but the risk of all

open and obvious dangers and those of which he has knowledge or of which he could have knowledge by the exercise of reasonable care. This is substantially a restatement in different language of the very things which the jury was told by instruction No: 9. And in instructions Nos. 13 and 19, given at appellant's request, the court fully covered all the points regarding the servant's assumption of risk. There was no error in giving instruction 9.

Instruction No. 13 is as follows: ''The amended complaint in this case charges that the chain in question was defective and also that it was not sufficient to stand the strain to which it was put and for which purpose it was used. In order to entitle the plaintiff to recover, it is not necessary that the plaintiff should prove both of these allegations. If the plaintiff has proved to your satisfaction by a preponderance of the evidence either of these allegations of his complaint, and if under the evidence he is otherwise entitled to recover, and the plaintiff is not guilty of contributory negligence and has not assumed the risk, and then I instruct you the plaintiff has made his case.'' This instruction is not open to the objection made against it, that the element of knowledge or means of knowledge on appellant's part is ignored, because it expressly states that before the jury can find for the plaintiff he must be otherwise entitled to recover under the evidence. Instructions Nos. 6, 9 and 17, given at appellant's request, sufficiently state the law governing the necessity of showing knowledge of the danger on the master's part. Instructions should all be construed together, and not separately. Under the allegations of the complaint appellee could recover whether the chain was defective or whether it was insufficient, and the use of the word ''sufficient'' in the instruction does not raise a question outside of the issues.

The portion of instruction No. 16 objected to is as follows: ''You are instructed if you find for the plaintiff it becomes

your duty to assess his damages at such sum as the evidence relating thereto shows him to be entitled, not exceeding the sum of $15,000. The elements of damages you are entitled to take into consideration consist of all the effects of the injury complained of, if any, as shown by the evidence relating thereto." This instruction does not, as appellant alleges, assume the truth of facts in issue, or that certain facts have been proven, for it begins with the condition, "If you find for the plaintiff," and the jury could not find for him without finding that he was injured.

There is evidence fairly tending to support the verdict, and, as no reversible error appears, the case is affirmed.

Lairy, C. J., Hottel and Felt, JJ., concur.

Adams and Myers, JJ., concur in conclusion reached.

## CONCURRING OPINION.

Myers, J.—I concur in the conclusion reached by the majority opinion in this case, but I cannot agree to follow an unnecessary and erroneous path in order to reach that conclusion.

The complaint was challenged by a demurrer for want of facts. The statement in the complaint, "that while said plaintiff was so standing in the yards of said defendant's factory," lends no aid, nor does it weaken the facts, theretofore alleged, tending to show the relation of the parties, occupation and situation of the plaintiff at the time he was injured.

The facts directly stated show plaintiff's employment by defendant, the character of the employment, the place he was employed to work (in and about defendant's factory), and that while so employed as a common laborer in defendant's yards he was injured. These facts cast on defendant the duty to protect plaintiff from the claimed injuries, alleged to have been caused by defendant's negligence. The complaint was sufficient.

It is argued that the complaint does not show that at the time of the injury plaintiff was at a place where he was employed to work, and in support of this insistence the case of *South Bend, etc., Plow Co.* v. *Cissne* (1905), 35 Ind. App. 373, 74 N. E. 282, is cited. In that case the plaintiff was employed to propel a truck from place to place *in the factory,* and to see that the screws and bolts, which were a part of the truck, were kept ''tight in place''. This was the extent of his employment. There is not one word or combination of words in the complaint that can be twisted into a statement that the injury occurred while plaintiff was propelling the truck, or while he was engaged in tightening the bolt. It does appear that the injury happened while plaintiff was preparing to tighten the bolt.

If it be conceded that preparation to tighten the bolt was necessary as an incident of his employment to keep the bolts tight, it should further appear that he was in a place at the time of such preparation where he might reasonably be expected to be in the the performance of the work he was thus employed to do. The pleading is silent on that subject. What was he to do in the way of preparation? The complaint does not answer, but it is plain that when the bolt became loose plaintiff was *then* using the truck, and *there,* in the factory, ''engaged in his work as aforesaid.'' The work aforesaid was propelling the truck from place to place in the factory. The bolt was loose, and he was preparing to fasten it, not that he was ''then and there'' preparing to fasten it, for it would hardly be said that he was at the same time both propelling the truck and doing some physical act in the way of preparing to fasten a bolt on it. Plaintiff at said time (January 21) of said preparation was where? In the factory? No, he ''was at and near a certain pile of manufactured ware,'' which is not shown to be in or out of the factory, **nor** in a place where plaintiff was employed to work.

The majority opinion in the case at bar, holding the com-

plaint in the case of *South Bend, etc., Plow Co.* v. *Cissne, supra,* good as to the point herein referred to, is in conflict with the rule of pleading as old as the common law, and incorporated in the civil code of this State, requiring a statement of the facts constituting the cause of action in plain and concise language. Certainty in pleading was the rule at common law. It is the rule now, and should not be unsettled. *City of Logansport* v. *Kihm* (1902), 159 Ind. 68, 64 N. E. 595; *Speeder Cycle Co.* v. *Teeter* (1897), 18 Ind. App. 474, 48 N. E. 595; *Indiana Rolling-Mill Co.* v. *Livezey* (1911), 47 Ind. App. 396, 94 N. E. 732.

NOTE.—Reported in 96 N. E. 643, 649. See, also, under (1) 26 Cyc. 1384; (2) 26 Cyc. 1389; (3) 26 Cyc. 1384, 1389; (4) 38 Cyc. 1927; (5) 26 Cyc. 1513; (6, 7) 26 Cyc. 1503; (8) 26 Cyc. 1497; (9) 38 Cyc. 1778; (10) 38 Cyc. 1657. As to the doctrine of assumption of risk and contributory negligence as affecting the right of an employe to recover for personal injuries, see note to *Brazil Block Coal Co.* v. *Gibson* (Ind.) 98 Am. St. 289; 97 Am. St. 884. On the question whether a servant may assume the risk of dangers created by the master's negligence, see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215. As to assumption of risk of dangers created by the master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see 28 L. R. A. (N. S.) 1250.