## PINNELL ET AL. v. KELLY.

[No. 7,646. Filed October 30, 1912. Rehearing denied January 21,
1913. Transfer denied June 26, 1913.]

1. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Suffi-
ciency of Allegations.—Conclusions.*—In a servant's action for
personal injuries, by being caught and thrown by an unguarded
pulley attached to a shaft over which plaintiff stepped while
attempting to adjust a planer which he was operating, where the
averments of the complaint showed his employment by defend-
ant, the character of the service required of him and the particu-
lar place where his work was to be done, and then detailed the
particular manner in which he had to perform his work, espe-
cially in the event the planer became choked, an allegation that,
when the planer became choked, it was necessary for plaintiff to
step over a shaft containing the offending pulley and into a
small space between the shafting and the planer in order to ad-
just the planer and relieve the choked condition, was not objec-
tionable as the statement of a conclusion, but must be treated as
the tender of an issuable fact as to whether there was a safer
or better way, or any other way, in which to do that particular
service. p. 66.

2. MASTER AND SERVANT.—*Injuries to Servant.—Guarding Machin-
ery.—Factory Act.—Construction.*—Under §8029 Burns 1908,

Acts 1899 p. 231, providing that all vats, fans, saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description in factories shall be properly guarded, pulleys attached to shafting are included, and the failure to guard a pulley attached to a shaft over which an employe is obliged to step in the performance of his duty would be negligence *per se.*        p. 67.

3.   MASTER AND SERVANT.—*Injuries to Servant.—Unguarded Machinery.—Complaint.—Sufficiency.*—In a servant's action for personal injuries, a complaint alleging that plaintiff was employed to operate a planer in defendant's factory, that near to said planer was an unguarded pulley attached to a shaft and which it was entirely practical to guard, but that defendant negligently failed to do so, that in the operation of such planer it often became choked and when such condition arose it was necessary for plaintiff to step over the shaft containing such unguarded pulley and into a small space between the shaft and the planer in order to adjust the planer and relieve the condition, that the planer became choked and in attempting to adjust the planer and remove the choked condition plaintiff stepped over said shaft and that in so doing his clothing was caught in a nick on said pulley, whereby he was thrown and injured, is sufficient to withstand a demurrer.   p. 67.

4.   MASTER AND SERVANT.—*Injuries to Servant.—Defective Machinery.—Complaint.—Sufficiency.*—A complaint, in a servant's action for personal injuries caused by his clothing being caught in a nick in a rapidly revolving pulley, about which plaintiff was obliged to go while in the performance of his duty, charging that defendant was negligent in using a broken and defective pulley with knowledge of its condition, that plaintiff did not know of the defect, and alleging facts showing that he did not assume the risk of the negligence charged, sufficiently stated a common-law cause of action.   p. 67.

5.   TRIAL.—*General Verdict.—Answers to Interrogatories.*—A general verdict prevails over answers to interrogatories, unless the answers are in irreconcilable conflict therewith.   p. 68.

6.   MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.—Contributory Negligence.*—In a servant's action for injuries sustained by his clothing catching in the broken flange of an unguarded pulley about which he was obliged to go in the performance of his work, answers to interrogatories which merely show that plaintiff could have seen the pulley are not in conflict with the general verdict for plaintiff as showing contributory negligence, since they do not show that he could have seen the defect in the rapidly revolving pulley, and it cannot be said that he was guilty of contributory negligence from the mere fact that he knew the location of the unguarded pulley and that he

continued to work about same while it was in such unguarded condition. p. 68.

7. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Jury Question.*—Where an employe who continued in the performance of his work in operating a planer with knowledge of the unguarded condition of a pulley attached to a shaft, over which he was often required to step in adjusting the planer, was injured by his clothing being caught in such pulley, it was for the jury to determine whether he was at the time in the exercise of ordinary care and caution. p. 68.

8. TRIAL.—*Answers to Interrogatories.—Conflicting Answers.*—The jury's answer to an interrogatory in a personal injury case, that the injury was purely accidental, is nullified by other answers showing that the injury was due to defendant's negligence and showing that the jury did not mean that the injury was purely accidental in the sense that it occurred without any one's fault. p. 68.

9. MASTER AND SERVANT.—*Injuries to Servant.—Choice of Ways of Performing Work.—Contributory Negligence.*—Where there are two ways of performing a service, one of which is safe and the other unsafe, and the servant, with knowledge of the risk, voluntarily chooses the unsafe or dangerous way, he cannot recover for resulting injury. p. 69.

10. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Answers to Interrogatories.*—In a servant's action for personal injuries by being caught in an unguarded pulley while he was attempting to remove a board which had choked the planer he was operating, where it was shown that in making the attempt plaintiff stepped over a shaft containing the pulley and into a small space between the shaft and the planer, and there were answers by the jury to interrogatories showing that he did not choose a dangerous way to loosen such board, and that he knew of no safer way, the court cannot say as a matter of law that the way chosen by plaintiff for the removal of such board was a dangerous way. p. 69.

11. TRIAL.—*Instructions.—Expert Testimony.*—An instruction which in effect leaves to the jury the consideration of all the evidence, expert and nonexpert, and states that after such consideration the jury may conclude what weight, if any, it will give to the opinion of expert witnesses, is proper. p. 69.

12. TRIAL.—*Opinion Evidence.—Consideration by Jury.*—A jury is not bound to yield its judgment to the opinion of experts. p. 70.

13. APPEAL. — *Review. — Harmless Error. — Instructions.* — Even though some of the instructions given are not complete in themselves, the error is cured where other instructions given as a part of the same series render them complete, and the instruc-

tions taken as a whole are as favorable as appellant had a right to ask.  p. 70.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by Edward Kelly against Julius W. Pinnell and others.  From a judgment for plaintiff, the defendants appeal.  *Affirmed.*

*Elmer E. Stevenson,* for appellants.
*Joseph E. Bell* and *Shirts & Fertig,* for appellee.

IBACH, J.—Appellee recovered in this action against appellants for personal injuries alleged to have been caused by their negligence.  Appellants assign error of the trial court in overruling their demurrers to each paragraph of complaint, in overruling their motion for judgment upon interrogatories and answers returned thereto by the jury, notwithstanding the general verdict, and in overruling their motion for new trial.  The complaint was in two paragraphs.  The first paragraph is upon the theory that appellants were guilty of violating the statutes governing the guarding of machines used in factories.  In this paragraph it is stated, in substance, that defendants were partners, engaged in operating a planing mill wherein lumber was cut and shaped for building and mercantile purposes; that in the room where plaintiff was injured there was located a planer table, ripsaw, frizzing machine, mortise machine and tenant machine, all of which were operated by power from an engine, by means of shafting and pulleys thereon, and the character, extent and situation of the shafting and pulleys are fully described.  The situation of the planer, method of its operation, and things required of the employe in such operation are then alleged and described as follows.  "That the said planer above referred to was located about two and one-half feet from said lower shafting, and the bits of said planer were operated by means of belting which ran from a pulley upon said lower shafting to a pulley known as the planer head, which operated said bits of said planer; that from two

other pulleys upon said lower shafting a belt ran to and operated the feeding device upon said planer; that all of said pulleys on said lower shafting were close together and were situated practically in front of said planer; that said pulley from which the belting ran to the feeder on said planer, as aforesaid, was equipped with flanges upon the outer edges thereof and in one of said flanges was a nick caused by a piece of said flange being broken therefrom, which said nick was about an inch wide and one-half inch in depth; that said planer was located so near to said shafting and the pulleys thereon that in operating said planer the person so operating the same was compelled to stand near said shafting and pulleys thereon and to reach over the same in running timber or boards through said planer, and in so operating said planer it was frequently necessary to step over the said lower shafting and pulleys thereon and stand in the small space between said shafting and said planer in order to reach said planer; that frequently in planing timber or boards said planer would become choked, so that the feeders of the planer would cease feeding, and in order to loosen the timber therefrom when the planer was so choked, it was necessary for the person operating the same to step over the said lower shafting and pulleys thereon, and while standing in the small space above described, take hold of a large wheel upon said planer and turn the same backward in order to loosen the board or timber that had choked or clogged said planer." It is further alleged, in substance, that the lower shafting was not equipped with any device whereby the same, and the pulleys thereon, could be stopped while the main shafting overhead was running, nor was there any such device by which the pulleys on the lower shafting which ran the beltings connected with the planer could be stopped while said shafting was in motion; that said machinery, so situated, was dangerous, of which defendants had notice a long time prior to the injury, and that "said defendants negligently failed and neglected to construct any safeguard or any guard of any

kind over said lower shafting or over said pulleys thereon prior to the happening of plaintiff's accident;'' that it was entirely practical to guard said shafting and pulleys by boxing same, but that defendants ''negligently and carelessly failed to do so, and by reason of such negligence and failure upon the part of said defendants to construct such guard, said plaintiff was injured in the manner hereinafter set out.'' The paragraph then alleges: ''That said plaintiff had been employed by said defendants as a laborer in said planing mill a little more than three weeks prior to the 14th day of March, 1907, but had never prior to said date operated the said planer above referred to. That upon the morning of said March 14th, 1907, said defendants through their foreman at said planing mill, while such foreman was acting in the line and within the scope of his duties as such foreman, ordered and directed this plaintiff to plane certain lumber or timber upon said planer, by running the same through said planer, and that this plaintiff in obedience to said orders and direction of said defendants as aforesaid, proceeded in a careful, prudent and workmanlike manner to plane said lumber or timber by running the same through said planer; that after working about ten minutes in operating said planer and running said lumber or timber through the same as aforesaid, and when in the act of running the sixth piece of lumber or timber through said planer, the said piece of lumber or timber on account of being hard, caused the said planer to choke and the feeder to cease feeding, and in order to release the said piece, thus choking the said planer and feeder thereon, it was necessary for said plaintiff to step over the said lower shafting and pulleys thereon while the same were in motion to enable him to turn the feed wheel of said planer backward and thus release said lumber therefrom—this being the only manner by which the said timber could be released from said planer; that said plaintiff then and there acting in the line of his duty in operating said planer proceeded in a careful and prudent manner to step

over said shafting and pulleys thereon and to stand within the space between said shafting and said planer as above described in order to release said piece of timber as aforesaid, and while in such position and while said shafting and pulleys thereon were in motion, said plaintiff took hold of the feed wheel on said planer and began turning the same backward in order to release said piece of timber from said planer, and to relieve the feeder of said planer from said choked condition, and while in the act of turning said feed wheel backward, thus loosening said piece of lumber or timber, and while acting in the line of his duty in the operation of said planer as aforesaid, the left leg of the overalls and trousers then and there worn by said plaintiff was suddenly without notice or warning to plaintiff, caught on the pulley upon the said lower shafting wherein said nick was broken as aforesaid, and plaintiff's trousers were suddenly and with tremendous force and violence wound around said lower shafting and pulley, thereby twisting and bending plaintiff's left leg in such a manner as to break and tear all of the ligaments loose from the knee joint,'' etc.

The second paragraph sets out the same facts, but attempts to state a cause of action at common law, for the negligence of appellants in using the pulley with a nick in the flange, of which defect appellee had no knowledge.

The objection is made to the first paragraph of complaint that the averment that it was necessary for appellee to step over the lower revolving shaft and pulleys and into the small space between the shafting and planer and to do so while the shafting was in motion, is simply a statement of a conclusion or opinion, and is not the statement of a fact. It is also urged that the statement that the pulley was not guarded is without force or effect, as the statute does not require pulleys to be guarded.

The first question presented is, does it appear from the direct allegations of the complaint, or from the necessary

inferences from such allegations, that the defendants

1. were guilty of violating the statutes governing the guarding of machinery used in factories? There are alleged the employment of appellee and the particular work he was required to perform; there are full and complete descriptions of the building and the various machines located therein, and a more minute description of the place where appellee actually stood while engaged in operating the planer. It is alleged that between this point and the machine itself, and immediately in front of it there was an unguarded revolving shaft, with pulleys attached thereto, that the planer became choked and the feeder had ceased to feed, that it was a part of his employment to keep the machine in operation and to remove the board which had caused it to choke, and to perform this part of his employment, it was necessary to step over the revolving shaft. The averment of such matter is but an averment of the details or in other words a mere narrative of the conditions and circumstances connected with such employment and the manner in which his work was to be performed from the time the relation of master and servant began, up until the time of the injury. The averment that it was necessary for appellee to step over the revolving shaft may be, in a sense, a conclusion, but when used in a pleading as it is used here, and especially when used in connection with the averment that this was the only manner in which the timber could be released from the planer, it constitutes the averment of an issuable fact in the case. We have examined each and all of the authorities cited by appellants to support their contention, but we are unable to find anything contrary to our holding here. We understand the rule to be, as laid down by these same cases, and many others that might be cited, that where the averments of the complaint show the employment of one person by another, the character of the service to be performed, the particular place where the work was to be done, then in detailing the manner in which the particular work was to be

done, it is not improper to say that in the doing of the work required, it was necessary to do thus and so. An averment like the one in this case, that it was necessary for the servant to step over the shaft to reach that particular part of the planer where the offending board was, in order to remove it, is held to make it an issuable fact as to whether there was a safer or better way or any other way in which to have undertaken the particular service. The first paragraph of complaint is therefore sufficient to withstand this objection and the second is likewise good as to a similar objection. *United States Cement Co.* v. *Whitted* (1910), 46 Ind. App. 105, 90 N. E. 481; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 71 N. E. 218, 71 N. E. 660; *I. F. Force Handle Co.* v. *Hisey* (1911), 52 Ind. App. 235, 96 N. E. 643.

It is provided by statute, §8029 Burns 1908, Acts 1899 p. 231, that all vats, fans, saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description in factories shall be properly guarded. This includes pulleys attached to shafting, and the failure to guard the particular machinery as charged would constitute negligence *per se*. The first paragraph of complaint is sufficient to withstand demurrer. *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69; *Hohenstein-Hartmetz, etc., Co.* v. *Matthews* (1910), 46 Ind. App. 616, 92 N. E. 196; *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135, 71 N. E. 268.

The second paragraph sufficiently states a common-law cause of action for appellants' negligence in using a broken and defective pulley with knowledge of its condition, of which defect appellee did not know, and its averments are sufficient to show that appellee did not assume the risk of the negligence charged. The demurrer to this paragraph was correctly overruled.

It is contended that the answers to interrogatories show contributory negligence on the part of appellee. A general verdict prevails over answers to interrogatories, unless the

answers are in irreconcilable conflict therewith. By the general verdict we may consider the following facts found in appellee's favor, that he received his injuries on account of the broken flange of the pulley attached to the shafting, which pulley might have been guarded without affecting its efficiency, that appellants knew of the defect in the pulley, that appellee did not know of it, and that in operating the planer in attempting to remove the obstructing board, appellee used ordinary care. We find no answers to interrogatories which are in conflict with this verdict. It is true that the jury answered in the affirmative interrogatory No. 75, "Could not plaintiff have seen the shaft and pulley thereon immediately west of the planer if he had looked before stepping over the shaft?" But by the general verdict the jury finds that he had no knowledge of the broken flange. It is possible and probable that he did see the shaft and pulley, but this does not show that he could have seen the defect in the pulley complained of, the nick on which his clothing caught, and this is particularly true when we remember that the shaft and pulley were revolving rapidly when he stepped over. Though appellee knew of the location of the shaft and pulley, and that they were in motion when he attempted to step over them, the mere fact that he continued to work about this unprotected machinery which should have been protected is not sufficient to justify us in saying that he was guilty of contributory negligence in so doing. The question whether he used ordinary care and caution under all the circumstances and conditions shown by the evidence was one of fact for the jury. *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489, 73 N. E. 996; *Baltimore, etc., R. Co.* v. *Cavanaugh* (1905), 35 Ind. App. 32, 71 N. E. 239.

The answer to interrogatory No. 89 that the injury was purely accidental is nullified by answers to other interrogatories which show that the injury was due to negligence of the appellants, and from a consideration

of all the answers it appears that the jury did not mean that the injury was purely accidental in the sense that it occurred without any one's fault. *Jenney Electric Mfg. Co. v. Flannery* (1913), 53 Ind. App. 397, 98 N. E. 424.

The rule of law is well settled that where there are two ways of performing a service and one of them is safe and the other is unsafe, and the servant, with knowledge

9. of the risk, voluntarily chooses the unsafe, or dangerous way, he cannot recover for resulting injury.

10. There is nothing in the answers to the interrogatories to show, however, that appellee knew of the broken pulley which was the proximate cause of the injury. In answer to interrogatory No. 83 the jury found that appellee did not choose a dangerous way to loosen the board obstructing the planer, and by its answer to interrogatory No. 85 "that he did not know of a safer way to remove such board," and the inference from other answers is that he used the practical way. So that there is not an answer to a single interrogatory which shows that the plan adopted by appellee to remove the board which had choked the planer was so clearly dangerous as to warrant this court in holding that the chosen way was, as a matter of law, a dangerous way. That was a question for the jury to determine from all the evidence given at the trial of the cause. See *F. Bimel Co. v. Harter* (1912), 51 Ind. App. 267, 98 N. E. 360; *Jenney Electric Mfg. Co. v. Flannery, supra.* We have carefully examined each and all of the answers to the interrogatories, and find no conflict between them and the general verdict, therefore appellants' motion for judgment on the answers to interrogatories was properly overruled.

It is assigned that the court erred in giving certain instructions to the jury, among them instruction No. 13 relative to the consideration which it should give to the testimony

11. of expert witnesses, when taken in connection with all the evidence in the case, and the other evidence in the case. Counsel for appellants claim that by this in-

struction the jury was given the right to reject expert testimony without cause. The objection is not well taken, for when the instruction is considered in its entirety, the effect is to leave to the jury the consideration of all the evidence expert and nonexpert, and to tell it that after such consideration it has a right to conclude what weight, if any, it would give to the opinion of expert witnesses as well as nonexpert.

It has been many times held that a jury is not bound 12. to yield its judgment to the opinion of experts, and we find no error in this instruction. *Head* v. *Hargrave* (1881), 105 U. S. 45, 26 L. Ed. 1028; *Laflin* v. *Chicago, etc., R. Co.* (1887), 33 Fed. 415; *The Conqueror* (1897), 166 U. S. 110, 133, 17 Sup. Ct. 510, 41 L. Ed. 937. Objection is made to other instructions, but when the charge to the jury is taken as a whole, we think the law applicable 13. to the case was fairly and fully presented to the jury.

While some of the instructions given might not be complete in themselves, yet they did not purport to state all the elements necessary for plaintiff to recover, and they were rendered complete by other instructions given as a part of the same series. Any inaccuracy existing in any particular instruction was fully cured by others given, and the instructions taken as a whole are as favorable as appellants had a right to ask.

There is abundance of evidence tending to prove the essential averments of the complaint, and the damages are not excessive, therefore the judgment must stand.

Judgment affirmed.

Note.—Reported in 99 N. E. 772. See, also, under (1) 26 Cyc. 1386; (2) 26 Cyc. 1090, 1134; (3) 26 Cyc. 1392; (5) 38 Cyc. 1929; (6) 26 Cyc. 1513; 38 Cyc. 1927; (7) 26 Cyc. 1482; (9) 26 Cyc. 1257; (11) 38 Cyc. 1736; (12) 38 Cyc. 1518; (13) 38 Cyc. 1778. As to master's duty to guard or enclose dangerous machinery, see 98 Am. St. 299. As to the duty and liability of a master with respect to guarding shafting, see 18 Ann. Cas. 652.