WHITSETT v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads:** PERSONAL INJURY TO BRAKEMAN: CONTRIBUTORY NEG-
LIGENCE: EVIDENCE OF CUSTOM. In an action by a brakeman for a
personal injury caused by the negligence of defendant's engineer, it
was competent for plaintiff, in order to show that he was not guilty of
contributory negligence, to prove that, in performing the duty in which
he was engaged when he received the injury, he adopted the course
usually pursued under the same circumstances by men in that calling,
though in the employment of other companies. *Jeffrey v. Keokuk &
D. M. R'y Co* , 56 Iowa, 546, followed.

2. ———: ———: ———: OPINION OF WITNESS. In such case it is not
competent for a witness, though himself a brakeman, to state that if he
had been in plaintiff's place he would have done as plaintiff did.

3. ———: ———: OPINION OF BRAKEMAN AS TO EFFECT OF TURNING
ON STEAM. One shown to have experience as a brakeman is competent
to testify as to the effects produced upon a train of cars by the sudden
turning on of steam after the speed of the train has been checked by
the brakes.

4. **Evidence:** IMPROPER CROSS-EXAMINATION. Questions asked upon
cross-examination, not for the purpose of testing the truth of any of
the witness' statements in chief, or with a view of eliciting further
information upon subjects on which he was examined in chief, are
improper, and should be excluded when objection is made thereto.

5. **Instructions:** MUST BE CONFINED TO PLEADINGS AND EVIDENCE.
It is error to submit a material question of fact to the jury upon which
there is no evidence; and it is equally erroneous to submit a question
which is not presented by the pleadings. For an illustration of the
violation of these rules, and for authorities cited, see opinion.

6. **Railroads:** INJURY TO BRAKEMAN: PRESUMPTION OF CARE FROM
NATURAL INSTINCTS: WHEN IT DOES NOT OBTAIN. The instinct of
self-preservation may, in the absence of direct evidence, be allowed
some weight as raising an inference of care on the part of one incurring
danger; but when the facts of the transaction are proved by direct testi-
mony, the fact of care, or the want of it, is to be determined from those
facts, and there is no room for mere presumption. *Way v. Illinois
Cent. R'y Co.*, 40 Iowa, 345, distinguished. *Dunlavy v. Chicago, R. I.
& P. R'y Co.*, 66 Iowa, 435, followed.

7. ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION OF LAW OR
FACT: RULE STATED. Where the facts bearing on the question of con-
tributory negligence are such that but one conclusion can reasonably be
drawn from them, it is the province of the court to determine that conclu-

sion.  But if from the facts different minds might reasonably reach differ-
ent conclusions, the parties are entitled to have the question submitted
to a jury; and in this case *held* that the question was properly so sub-
mitted.  See opinion for facts and authorities.

8. **Practice:** MISCONDUCT OF COUNSEL IN ADDRESSING JURY: WAIVER
OF BY FAILING TO OBJECT AT THE TIME: EXCEPTION.  While many
irregularities may occur during the trial of a cause, which, unless
objected to at the time, should be deemed to be waived, yet, where
counsel, in addressing the jury, violates one of the plainest rules of
practice to the prejudice of the other party, as was done in this case,
(see opinion for facts,) the offending counsel should hardly be heard in
this court to say that the misconduct was waived by the failure of oppos-
ing counsel to object at the time.

*Appeal from Mahaska District Court.*

TUESDAY, OCTOBER 20.

ACTION for the recovery of damages for a personal injury
sustained by plaintiff while in defendant's employ as a brake-
man on one of its trains, in consequence, as is alleged, of the
negligence of the engineer in charge of the engine which
was hauling said train.  There was a verdict and judgment
for plaintiff.  Defendant appeals.

*M. A. Low*, for appellant.

*Bolton & McCoy*, for appellee.

REED, J.—Plaintiff was employed as head brakeman on a
freight train.  He had been in defendant's service about ten
days at the time he received the injuries complained of, but
had some experience as brakeman on another road before
entering defendant's employment.  At the time of the acci-
dent he was making his first trip with the engineer who was
in charge of the engine.  The accident happened as the train
was approaching a station at which it was to be side-tracked
to permit a passenger train, which was following, to pass on
the main track.  It is the duty of the head brakeman, when
the train is approaching a station at which it is to be side-

tracked, to reduce its speed by applying the brakes, and when it has reached the proper distance from the switch to get down from it, while it is still in motion, and go forward and so adjust the switch as to permit the train to pass on to the side track. Plaintiff was in the performance of this duty at the time of the accident. He applied the brakes and reduced the speed of the train. He then started forward to the engine, in order, as he claims, to be in a convenient position from which to get down from the train when it should arrive within the proper distance of the switch. The car immediately in the rear of the tender was an ordinary box car, its top being somewhat higher than the top of the tender, and when plaintiff was in the act of getting from the car to the tender, or immediately after he stepped upon the tender, he fell to the ground and sustained the injuries of which he complains. His claim is that he was performing the duty required of him in the manner in which it is ordinarily performed, and that the engineer knew that he would descend to the tender from said box car after he had applied the brakes, and that he knew he was in the act of getting down from the car to the tender, and with that knowledge he negligently turned on steam, without giving him any warning that he was about to do so, and that the turning on of the steam caused a sudden increase in motion of the engine, and that he was thrown from the train by the jerking caused by this movement.

I. There was a tool-chest on the tender, which extended across the rear end and occupied the greater portion of it

1. RAILROADS: personal injury to brakeman: contributory negligence: evidence of custom.

There was a space, however, of from eight inches to one foot in width between the ends of the chest and the sides of the tender, and there was evidence tending to prove that plaintiff jumped or stepped from the top of the box car into one of these spaces. One question which arose in the case was whether there was any necessity for plaintiff to go forward to the engine before getting down from the train, and whether

he might not have left it with greater safety to himself by descending a ladder at the end of the box car, and stepping from that point to the ground. Another question was whether he exercised all reasonable care for his safety in passing from the box car to the tender. He was examined as a witness in his own behalf, and, against defendant's objection, was permitted to testify that brakemen, when they were required to go ahead to open switches, usually went forward to the engine before getting down from the train, and that it was easier to get down from the engine than from other places in the train, for the reason that the step on the engine was a foot nearer the ground than were those on the box cars. Two other witnesses who had been employed as brakemen on other roads, but who had never worked on defendant's road, were permitted to testify to substantially the same facts. The objection urged against the admission of this testimony was that defendant would be bound by the custom only, in case it prevailed, in the operation of its own road, and it did not appear that the witnesses were competent to testify as to the custom on its road. The evidence was offered, however, not for the purpose of proving a custom which would be binding upon defendant, but to show that plaintiff was not guilty of negligence in adopting that particular course in performing the duty. In the absence of express rule or direction prescribing the particular course he should pursue under the circumstances, he was required to choose between the two courses. And if, in making that choice, he adopted the course usually followed under like circumstances by men in that calling, that fact would have a very important bearing upon the question whether he exercised due care in making the choice. It was, therefore, not material whether the witnesses could testify to the custom on defendant's road or not. It was sufficient if they were able to testify to the course pursued under similiar circumstances by men generally in that employment. *Jeffrey v. Keokuk & D. M. R'y Co.*, 56 Iowa, 546.

One of the witnesses was permitted to testify, however, that, in going from the top of a box car in the rear of the tender to the engine, he would jump down on the same place in the tender on which plaintiff testified he jumped at the time of the accident. This evidence is incompetent. It was for the jury to say, under all the circumstances of the transaction, whether plaintiff exercised due care in passing from the car to the tender. The statement of the witness was, in effect, an expression of opinion by him that what plaintiff did was the proper thing to do under the circumstances. This clearly was not competent. *Jeffrey v. Keokuk & D. M. R'y Co., supra.* The same witness was also permitted to testify that if the motion of the engine is suddenly increased after the speed of the train has been checked with the brakes, it will cause a jerking of the train more or less violent, and that he had known coupling links and pins to be broken by that means. The objection urged against the admission of this testimony was that it was irrelevant and incompetent. The witness was a brakeman, but had never been employed on defendant's road. He gave an opinion based upon facts which had come under his own observation as to the effect which the sudden increase of the motion of the engine would have under given circumstances upon the balance of the train. We think the opinions of witnesses competent to form correct opinions on the subject are admissible to prove that fact; and we think, also, that the witness was shown to be competent to give an opinion. A question in the case was whether plaintiff was thrown from the train by a sudden jerk caused by an increased motion of the engine. There was other evidence tending to prove that steam was turned on to the engine and that its motion was increased. The evidence objected to tended to prove that if that was done it would have a tendency to cause the result which plaintiff claims was produced by it. It was therefore relevant to the issue.

II. Defendant examined as a witness the engineer whc was in charge of the engine at the time of the accident, and complaint is made of the action of the court in requiring him to answer certain questions asked him by plaintiff's counsel on cross-examination.

**4. EVIDENCE: improper cross-examination.**

Without setting out the questions objected to, we deem it sufficient to say that they in no manner related to the subjects upon which the witness was examined in chief. They were not asked for the purpose of testing the truth of any of his statements in chief, or with the view of eliciting further information than had been given in his examination in chief on subjects upon which he was examined; but were calculated and intended, no doubt, to elicit evidence of an independent fact which plaintiff's counsel deemed material to his case. The objection that the questions were not allowable on cross-examination should have been sustained.

III. The court gave the following instructions to the jury, the giving of which was assigned as error: "If you find from the evidence that the injury was caused by the engineer's putting on more steam, and thereby causing a jerk of the car on which plaintiff was then standing or being, and you further so find that he put on no more steam than was usual and necessary for the proper movement of the train, and under the circumstances disclosed by the evidence, this would not constitute such negligence on the part of the engineer as would render defendant liable in this case, unless you further find from the evidence that at the time of so putting on steam the engineer knew that plaintiff was in a dangerous situation, and after having such knowledge could have avoided the injury by the exercise of ordinary care. But if you find that the engineer put on more steam than was usual or necessary at such time and place, and had good reason to believe that it would have the effect to render it more than ordinarily dangerous for brakemen on the train or cars behind by reason of an unusually violent and sudden jerking of the cars, and that he gave

**5. INSTRUCTIONS: must be confined to pleadings and evidence.**

no notice or warning to plaintiff of such jerking, or such putting on of steam, then such putting on of steam would constitute a want of ordinary care on the part of the engineer."

The jury were told in effect, by these instructions, that plaintiff would be entitled to recover if he had established either (1) that the engineer turned on no more steam than was usual and necessary for the proper movement of the train at the time, but that he knew at the time that plaintiff was in a position of danger, and could have avoided the injury by the exercise of ordinary care, but neglected to use such care; or (2) that he turned on more steam than was usual or necessary at the time, and knew that this would have the effect to render it more than ordinarily dangerous to brakemen on the train, but gave plaintiff no warning or notice of his intention to put on the steam. We think the court was not warranted by the evidence in submitting either of these instructions to the jury. Steam was turned on by the engineer, but the evidence shows, without any conflict, that this was rendered necessary by the fact that the train was on a slight up-grade, and its momentum was not sufficient to carry it to the switch; and we find no evidence in the record that more steam was turned on than was usual or necessary for the proper movement of the train at the time. The evidence shows that the turning on of the steam caused a sudden jerking of the train; but it is shown that this always occurs when the motion of the engine is increased, and the slack in the train is taken up. Plaintiff testified that the jerk occurred at the instant he stepped or jumped into the space between the tool-chest and the side of the tender. There is no claim that it was sufficiently violent to have thrown him from the train if it had occurred while he was on the box car, or that he would have been injured by it if he had succeeded in reaching the middle portion of the tender before it occurred. But the danger of the situation arose from the fact that the jerk occurred at the instant his feet alighted in the narrow space between the tool-chest and the side of the

tender. And there is no evidence that the engineer knew when he turned on the steam that plaintiff was in that position, or that he was about to place himself in that position. The engineer testified that his whole attention was taken up at the time with the engine, and that he was looking in the opposite direction from where plaintiff was; and he is corroborated by the fireman, and is not contradicted by any other witness.

We think, also, that the second instruction quoted submits to the jury a question which does not arise under the pleadings. The act of negligence charged in the petition is that the engineer turned on the steam without giving the plaintiff any warning, when he knew that he was about to come down from the top of the box car over the tender and into the cab, and when he knew, also, that the turning on of the steam would cause the engine to make a sudden jerk forward, and would be liable to throw plaintiff from the train. The allegation is, not that "he turned on more steam than was usual or necessary at such time and place," but that he was negligent in turning it on at the time he did, when he knew that plaintiff was in a position where he was liable to be injured by the jerking of the train which would be occasioned by it. This court has often held that it is error to submit a material question of fact to the jury upon which there is no evidence. *State v. Osborn*, 45 Iowa, 425; *York v. Wallace*, 48 Iowa, 305; *Templin v. Rothweiler*, 56 Iowa, 259. It is equally erroneous to submit a question which is not presented by the pleadings.

IV. The jury were told in another instruction that they should consider and give proper weight to the instincts and presumptions which naturally lead men to avoid injury and preserve their own lives, in determining whether plaintiff at the time of the accident was in the exercise of ordinary care. In *Way v. Illinois Cent. R'y Co.*, 40 Iowa, 341, the jury were instructed that, in determining what the deceased was

6. RAILROADS: injury to brakeman: presumption of care from natural instincts: when it does not obtain.

doing at the instant he received the injury which caused his
death, they might give due weight to the instincts which
naturally lead men to avoid injury and preserve their lives,
and the instruction was approved by this court.   In that case
death had resulted from the injury, and it was material to
determine just what the deceased was doing at the instant
the injury occurred.   There was no direct testimony from
which that fact could be determined, and the holding is that
the instinct of self-preservation might be considered in con-
nection with the circumstances proven in determining it.
But when the facts of the transaction are proven by direct
testimony, the question whether the party acted negligently
or with care is to be determined from those facts.   Plaintiff
testified that he, in the night time, and when the train was
in motion, jumped or stepped from the top of the box car
into a narrow space between the end of the tool-chest and the
side of the tender, and the question was whether this was a
negligent or careful act.   It is manifest that the considera-
tion that men do not ordinarily expose themselves to dangers
or death can have no weight in determining that question.
The same instruction upon a similar state of facts was disap-
proved in *Dunlavy v. Chicago, R. I. & P. R. Co.*, 66 Iowa,
435.

V.   It was shown that there was a hand-hold and ladder
on the end of the box car towards the tender, and that by

7. ——: ——:
contributory
negligence:
question of
law or fact:
rule stated.

descending this ladder plaintiff might have
reached a position from which he could have
jumped or stepped to the ground without going
upon the tender or engine.   Defendant asked the
court to instruct the jury that if this ladder was intended
for the descent of plaintiff from the car, and he neglected to
use it in going from the car, but instead of using it jumped
from the car to the tender, he could not recover.

Other instructions were asked, to the effect that if plaint-
iff, by jumping from the car to the tender, exposed himself
to greater danger than he would have done if he had passed

from the car by the ladder, he was guilty of such contributory negligence as would defeat a recovery. The court refused to give these instructions, and such refusal was assigned as error.

We think the action of the court is right. The question whether plaintiff was guilty of contributory negligence was one of fact for the jury. It is true that there was but little dispute as to the facts. But the question whether a party has been guilty of negligence is not always one of law, when the facts are undisputed. If the facts are such that but one conclusion can reasonably be drawn from them, it is the province of the court to determine that conclusion. But if different minds might reasonably reach different conclusions from them, the parties are entitled to have the question determined by the jury. *Milne v. Walker*, 59 Iowa, 186. We think the court properly submitted the question to the jury. See, also, *Hatfield v. Chicago, R. I. & P. R'y Co.*, 61 Iowa, 434; *Houser v. Same*, 60 Id., 230; *Slossen v. Burlington C. R. & N. R'y Co.*, Id., 215; *Sloan v. Central Iowa R'y Co.*, 62 Id., 728.

VI. One of the grounds of the motion for a new trial was that plaintiff's counsel were guilty of misconduct in

8. PRACTICE: misconduct of counsel in addressing jury: waiver of by failing to object at the time: exception.

making certain statements in their arguments to the jury which were not warranted by any evidence in the case. The counsel who made the opening argument made the following statement to the jury: "It is easy for them to get their witnesses. They will bring a fellow across the continent if it is necessary; and he comes if he looses his job. They do not always bring all of their employes. There was another employe in this case; he was hind brakeman, and he knew something of the matter, and he opened his mouth and it was unfavorable to them, and they turned him off, and he is in Missouri or somewhere else, you do not know where. Why did they not bring him? Because he is a sardine, and they do not want him. They know those who will testify for

them, and those who will not they discharge from the road." There was no basis in the evidence for any of these statements with reference to the rear brakeman. They are statements of fact which were introduced into the case for the first time during the argument to the jury.

Without attempting to justify this practice, counsel for plaintiff insist that, as defendant made no objection at the time, and did not ask the district court to exclude the objectionable statement from the attention of the jury, it cannot now be heard to complain. It is doubtless true that many irregularities may occur during the trial of a cause, which, unless objected to at the time, should be deemed to be waived. A party could hardly sit by in silence and hear erroneous or extravagant claims made with reference to the evidence, without waiving the right to complain of such statements in the future. But, in this case, the statement was that certain facts existed of which there was not only no evidence, but no claim that they were proven; and from that statement the jury were asked to make certain deductions prejudicial to the other party to the cause. After thus violating one of the plainest rules of practice to the prejudice of the other party, we are not prepared to say that counsel should now be heard to claim that their misconduct was waived by the failure of defendant to object to it at the time. But, as the cause must be reversed on other grounds, we do not deem it necessary to determine the matter.

Objection is made to certain statements made in the closing argument. Without setting them out, we deem it sufficient to say that they afford defendant no just ground of complaint.

Other questions have been argued by counsel, but, as they will probably not arise on a retrial of the cause, we do not consider them. For the errors pointed out, the judgment is

REVERSED.