RICHARD DALEY *vs.* AMERICAN PRINTING COMPANY.

Bristol.   October 30, 1890. — January 7, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Negligence — Due Care.*

An employee, having occasion in the course of his duty to use an elevator, mounted a hogshead for the purpose of putting the belt operating it on a pulley, and was injured by being caught by a set screw projecting from a collar on a shaft on which was the pulley. At the trial of an action brought by him against his employer to recover for such injuries, there was evidence tending to show that the elevator was in charge of nobody, and was used by any of the workmen as they had occasion; that the belt was liable to come off rather often, and had done so shortly before the accident, when a fellow workman helped the plaintiff to put it on, and did so by mounting the same hogshead, which had been there about eight years; that there were no rules posted up forbidding the workmen to put on the belt when it came off; that for a number of years previously various different workmen had been more or less in the habit of putting it on when it came off; and that the plaintiff and other workmen had never been told not to put the belt on. The jury took a view of the premises. There were no rules or instructions to the men as to the proper mode of putting on the belt, or as to the proper place to stand while doing so. *Held*, that it could not be said, as matter of law, that there was no evidence at all upon which a verdict for the plaintiff might stand.

When it is within the duty or the scope of the employment of a servant to perform a particular and somewhat dangerous service, evidence of the usual way in which a like service was done by a fellow servant is competent on his behalf to show that in performing the service on a particular occasion he was in the exercise of due care.

TORT, for personal injuries sustained by the plaintiff, while in the defendant's employ, by being caught by a set screw projecting from a collar on a shaft, as he was adjusting upon a pulley on the shaft a belt by which an elevator was operated in the defendant's print works. After the former decision, reported 150 Mass. 77, the case was tried in the Superior Court, before *Staples*, J., who refused to rule, as requested by the defendant, that the plaintiff was not entitled to recover, and submitted the case to the jury, who returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts, so far as material to the points decided, appear in the opinion.

*A. J. Jennings*, for the defendant.

*J. W. Cummings*, for the plaintiff.

C. ALLEN, J. From reading the statement of the evidence in the bill of exceptions, it would seem that a verdict for the defendant would have been more satisfactory. But we are unable to say, as matter of law, that this was required. It is stated as a fact, free from controversy, that the elevator was used by anybody who had occasion to go from the basement to a floor above, or *vice versa*, and there was some evidence tending to show that there was nobody to take charge of it; that any of the men used it as they had occasion; that the belt by which it was operated was liable to come off rather often; that it had done so shortly before the accident, when Anderson, one of the plaintiff's fellow servants, helped the plaintiff to put it on, and did so by mounting the hogshead on which the plaintiff stood when he was caught by the set screw and injured; that the hogshead had been there for eight years; that there were no rules posted up forbidding the men to put on the belt when it came off; that for a number of years previously various different workmen had been more or less in the habit of putting it on when it came off; that of these Kelly had put it on many times, by getting up on the hogshead; that Anderson had put it on five or six times, and Manuel once or more times; that three other men had been

discharged by Butterworth, the overseer of the printing department, for putting on belts; and that O'Hare had tried to put the belt on, and Grimes also, the latter being unable to say how many times. Some of the men, the plaintiff among others, testified that they never had been told *not* to put the belt on. There was no pretence of any rules or instructions to the men as to the proper mode of putting it on, or as to the proper place to stand while doing it. The jury took a view of the premises, and had an opportunity to judge for themselves whether one who was trying to put the belt on might, without negligence, make the attempt from the top of the hogshead.

Looking at the testimony in the light most favorable to the plaintiff, we cannot on exceptions say, as matter of law, that there was no evidence at all upon which the verdict may stand; nor that it was not within the plaintiff's province to put on the belt when it got off, if he had occasion to use the elevator; nor that at the time of the accident he was not in the exercise of due care; nor that the defendant was free from negligence in respect to the elevator belt.

The evidence of Kelly, that his way of putting on the belt was by mounting the hogshead, was competent. There was evidence that the hogshead had stood there eight years, and Kelly testified that he had worked in the print works twenty years, and was working there at the time of the accident; that he had seen the belt come off sometimes three or four times a day; that every one put it on who was using the elevator, and that he had himself put it on sometimes three or four times a day when using the elevator. If he had been in the habit of putting it on as often as this, it was competent for him to testify how he was in the habit of doing it. It bore somewhat upon the question of the plaintiff's due care. If Kelly and other witnesses were in the habit of putting on the belt by mounting the hogshead, the jury might properly be informed of the fact, and give to it its due weight. Where it is within the duty or the scope of the employment of a servant to perform a particular service, which is attended with some danger, and where it becomes incumbent on him to show that on a particular occasion he was in the exercise of due care, evidence is competent in his behalf to show that he conducted himself in the usual and ordinary way in

which similar acts were done by persons engaged in the like employment. *Snow* v. *Housatonic Railroad*, 8 Allen, 441, 449, 450. Kelly's testimony falls within this rule.

*Exceptions overruled.*