# The Jenney Electric Manufacturing Company
## *v.* Flannery.

[No. 8,116.  Filed May 10, 1912.  Rehearing denied May 9, 1913.]

1. Master and Servant.—*Injuries to Servant.—Safety Appliances.
—Complaint.—"Dust."*—A complaint charging defendant's failure
to equip its emery wheel with an exhaust fan as required by the
factory act (§8029 Burns 1908, Acts 1899 p. 231), and alleging
that a large number of small and irregular particles, of which
the wheel was composed, became dislodged therefrom in the form
of dust and were projected in the form of dust violently from
the wheel into the air, and that particles thus thrown off in the

form of dust struck plaintiff's eye and produced the injury complained of, is not objectionable on the ground that it shows that the injury was not caused by dust, but by small particles of the wheel thrown off in its use, since if the particles were so small and fine that an exhaust fan would have carried them away and prevented the injury, they may properly be regarded as "dust" within the meaning of the statute.  p. 402.

2.  MASTER AND SERVANT.—*Safety Appliances.—Exhaust Fans.— Statutes.*—The purpose of the statute (§8029 Burns 1908, Acts 1899 p. 231), requiring exhaust fans on emery wheels is to reduce the hazard incident to the operation of such wheels.  p. 402.

3.  TRIAL.—*Verdict.—Answers to Interrogatories.—Conflicting Answers.*—Conflicting answers by the jury to interrogatories nullify each other and do not affect the general verdict.  p. 403.

4.  TRIAL.—*Answers to Interrogatories.—Effect.*—Answers by the jury to interrogatories showing that a fact was not established with certainty, or that there was no possibility of the jury ascertaining such fact with certainty, do not amount to a finding that such fact was not established by a preponderance of the evidence.  p. 404.

5.  TRIAL.—*Interrogatories to Jury.—Construction.*—If an interrogatory is doubtful in its meaning, the doubt will be resolved in favor of the general verdict.  p. 404.

6.  MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.*—A verdict for plaintiff in a servant's action for personal injuries is not overcome by the jury's answer to an interrogatory that the injury was purely accidental, where other answers show that the injury was due to the negligence of defendant, and it appears from the answers as a whole that the jury did not mean that the injury was "purely accidental" in the sense that it occurred without the fault of any one.  p. 404.

7.  MASTER AND SERVANT.—*Injuries to Servant.—Choice of Methods of Work.—Right of Recovery.*—Where there are two ways of performing a service, one of which is safe and the other dangerous, or one of which is more dangerous than the other, and the servant is aware of such facts, he will not, as a general rule, be permitted to recover damages from the master for injuries resulting from his voluntary adoption of the dangerous or more dangerous way.  pp. 406, 407.

8.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.*—A servant assumes all the usual and ordinary risks incident to the employment, and also the risk of any known dangers that may arise during the course of such employment, even though not usually incident thereto, so that where the servant knows of a condition which renders the performance of his duties hazardous, and voluntarily encounters it, he cannot recover for injuries there-

by sustained, even though such danger was due to the master's negligence. p. 406.

9. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Care by Servant.*—Where the injury is the result of one of the risks assumed, the servant cannot recover, regardless of the care or want of care on the part of such servant in encountering the danger. p. 406.

10. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—"Reasonable Care."*—The question of whether an injured party was guilty of contributory negligence depends upon whether he was exercising reasonable care at and immediately prior to the injury, that is such care as persons of ordinary prudence would exercise under the conditions and circumstances of the particular case. p. 408.

11. NEGLIGENCE.—*Reasonable Care.—Jury Question.*—The question of reasonable care is usually one of fact for the jury since it is only in cases where the facts are undisputed and are such that but a single inference may reasonably be drawn therefrom, that the court can determine as a matter of law that reasonable care was or was not exercised. p. 408.

12. MASTER AND SERVANT.—*Injuries to Servant.—Choice of Methods of Work.—Contributory Negligence.*—Contributory negligence cannot be imputed to a servant from the mere fact that he chooses the more dangerous way or method of performing a duty when a safer method was open to his choice, but is a question for the jury, except where the servant's choice exposed him to dangers so obvious that no reasonable man exercising ordinary care for his own safety would have encountered them, and there is no room for reasonable minds to differ upon the question. p. 408.

13. MASTER AND SERVANT.—*Injuries to Servant.—Violation of Statutory Duty.—Assumption of Risk.—Contributory Negligence.*—Although a servant's right to recover may be determined by the application of the doctrine of assumption of risk in cases where the danger created by the negligence of the master is one that can be assumed by the servant under his contract, where the negligence charged consists of the master's violation of a statutory duty, assumption of risk does not apply, and the question must be determined by the principles of law relating to contributory negligence. p. 410.

14. MASTER AND SERVANT.—*Injuries to Servant.—Choice of Methods of Work.—Contributory Negligence.—Answers to Interrogatories.*—In an action by a servant to recover for injury to his eye caused by emery dust lodging therein while plaintiff was sharpening a tool on the emery wheel, where the negligence charged was the master's failure to provide an exhaust fan to remove the dust, as provided by §8029 Burns 1908, Acts 1899 p. 231, and the jury's

answers to interrogatories showed that defendant had supplied the emery wheel to plaintiff to be used in sharpening his tools, that it was suitable for the purpose and that the superintendent had directed plaintiff to use it, it cannot be said as a matter of law that plaintiff was guilty of contributory negligence in using such emery wheel instead of making use of a tool room provided by the master wherein tools could be sharpened with more safety. p. 411.

15. MASTER AND SERVANT.—*Injuries to Servant.—Evidence.—Sufficiency.*—In a servant's action for injuries to his eye caused by emery dust lodging therein while plaintiff was sharpening a tool on an emery wheel, where the complaint proceeded on the theory that plaintiff was employed as a machinist and that it was a part of his duties under such employment to keep his tools sharp by grinding them on the emery wheel which defendant had provided for that purpose, evidence showing that a part of plaintiff's work was to sharpen the drills with which he worked and that he usually sharpened all his tools on such emery wheel, that the superintendent often saw him grinding tools on such wheel, and on one occasion had specially directed plaintiff to grind a drill thereon, is sufficient to show that plaintiff was acting within the scope of his employment at the time he received his injury. p. 411.

16. MASTER AND SERVANT.—*Injuries to Servant.—Choice of Methods of Work.—Contributory Negligence.—Evidence.*—Where, in a servant's action for injuries, the evidence shows that the way adopted by plaintiff was one of the ways provided by the master, or at least a way recognized by him as a proper one, and there was evidence to justify the jury in finding that plaintiff was exercising ordinary care at the time of the injury, the verdict for plaintiff cannot be disturbed on the ground that plaintiff was guilty of contributory negligence in choosing a dangerous way when a safer way had been provided by the master. p. 412.

17. MASTER AND SERVANT.—*Injuries to Servant.—Proximate Cause. —Evidence.—Sufficiency.*—In an action by a servant for injury to his eye occasioned by a particle of emery dust lodging therein, evidence showing that the emery wheel had not been equipped with an exhaust fan, that an exhaust fan would not carry away all particles of emery rebounding from the wheel, but that it would do so to some extent, and that plaintiff's injury was caused by a minute particle of emery, was sufficient to warrant the jury in concluding that the failure to provide the exhaust fan was the proximate cause of the injury, although it was not expressly shown that the particle causing the injury was one that would have been removed by an exhaust fan had one been provided. p. 413.

18. NEW TRIAL.—*Answers to Interrogatories.—Evidence.*—A new trial is not warranted on the ground that a fact found by an answer to an interrogatory is not sustained by the evidence, unless the fact is one which is essential to the general verdict. p. 415.

19. NEGLIGENCE.—*Contributory Negligence.—Aggravation of Injuries.—Damages.*—Subsequent negligence of an injured party which tends to aggravate the injury, although to be considered as affecting the measure of damages, does not bar a recovery of such damages as were occasioned by the original injury. p. 416.

20. APPEAL.—*Review.—Instructions.*—In an action by a servant for injury to his eye caused by a particle of emery dust, appellant cannot complain of the court's failure to include a definition of "dust" in the instructions, if he failed to tender the court an instruction containing a proper definition. p. 416.

21. APPEAL.—*Review.—Refusal of Instructions.*—There is no error in refusal of instructions that are fully covered by instructions given. p. 416.

22. MASTER AND SERVANT.—*Injuries to Servant.—Evidence.—Admissibility.*—In an action for personal injuries by a servant whose eye was injured by a flying particle of emery from an emery wheel on which he was sharpening a drill, there was no error in the admission of testimony to prove that it was customary for the employes to sharpen their drills and other tools on the emery wheel at which plaintiff was working when he received the injury. p. 417.

From Marion Circuit Court (17,919) ; *Charles Remster,* Judge.

Action by Thomas Flannery against The Jenney Electric Manufacturing Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson,* for appellant.
*Miller & Dowling,* for appellee.

LAIRY, J.—The appeal in this case is taken from a judgment rendered by the trial court in favor of appellee for damages caused by the loss of an eye through the alleged negligence of appellant. The negligence charged in the complaint was the failure of appellant to equip an emery wheel located in its factory with an exhaust fan in accord-

ance with the provisions of our factory act. §8029 Burns 1908, Acts 1899 p. 231. Appellee was employed in the factory as a machinist and received the injury while using said emery wheel. A demurrer to the complaint was overruled and this is the first error relied on for reversal. Appellant objects to the sufficiency of the complaint on the

1. ground that it appears from the averments thereof that the injury was not caused by dust escaping from the emery wheel, but by particles of the wheel thrown off in its use, and that an exhaust fan was not intended to prevent and would not have prevented an injury from such a source. This objection is not well taken. The complaint avers in substance that a large number of small and irregular particles, of which the wheel was composed, became dislodged therefrom in the form of dust, by reason of the contact of the revolving wheel with the tool, and were projected in the form of dust violently from the wheel into the air, and that particles of the wheel and of the tool which he was sharpening, thus thrown off in the form of dust, struck him in the eye causing the injury for which he sues. These averments sufficiently charge that the particles which struck and injured plaintiff's eye were sufficiently small to be properly denominated as dust. If the particles thrown off from either the wheel or the tool which was being sharpened were so small and light that an exhaust fan of proper power, correctly attached and operated in connection with the emery wheel, would have carried them away and prevented the injury, then it may be properly regarded as "dust" within the meaning of the statute. §8029 Burns 1908, Acts

2. 1899 p. 231. The purpose of the statute requiring exhaust fans on emery wheels is to reduce the hazard incident to their operation. No doubt, as contended by appellee, the statute was intended to provide a means for carrying away the dust which would otherwise float in the air, and produce injurious results to those who breathed it, but if the result of the use of such a fan in connection with the

operation of an emery wheel is to carry away small particles of matter thrown off from such wheels while in operation, it has the effect to afford protection to the eyes of persons employed at such wheels.     We can not say that the legislature did not intend that the statute should have this effect.     *Muncie Pulp Co.* v. *Hacker* (1906), 37 Ind. App. 194, 76 N. E. 740; *Indianapolis Foundry Co.* v. *Bradley* (1910), 45 Ind. App. 530, 89 N. E. 505.     The averments of the complaint show clearly that the injury to the eye of appellee was caused by dust and that an exhaust fan would have prevented the injury.     The complaint is otherwise sufficient and the demurrer was properly overruled.

The jury returned with its general verdict answers to 106 interrogatories submitted by the court.     The second error assigned is that the court erred in overruling the motion of appellant for judgment in its favor notwithstanding the general verdict.     Upon this question it is first asserted that the interrogatories show that the negligence of the appellant was not the proximate cause of the injury to appellee.     As sustaining this contention we are cited to interrogatory No. 74, and the answer thereto which are as follows: ''Is there any certainty that an exhaust fan would have prevented the particle from getting into plaintiff's eye?     A.     No possibility.''     Appellant claims that this amounts to a finding that there is no possibility that an exhaust fan would have prevented the injury.     As the interrogatory is framed and answered, its meaning is not entirely clear.     It might mean that there was no possibility that an exhaust fan would have prevented the injury; but if it has such meaning it is in conflict with interrogatory No. 63, in answer to which the jury finds that an exhaust fan or guard would have prevented the particle from getting into appellee's eye.     In case two interrogatories are

3.     in conflict, they nullify each other and the general verdict is not affected by either.     *Terre Haute, etc., R. Co.* v. *Mason* (1897), 148 Ind. 578, 46 N. E. 332; *Fire-*

*mans Fund Ins. Co.* v. *Dunn* (1899), 22 Ind. App. 332, 53 N. E. 251. If by its answer, the jury meant that there was no possibility of determining this fact with certainty, such answer will not overthrow the general verdict. If the fact was established by a preponderance of the evidence, the jury was justified in finding such fact to be true by its general verdict. Absolute certainty is not required and answers to interrogatories showing that a fact was not established with certainty or that there was no possibility of the jury ascertaining such fact with certainty, would not amount to a finding that such fact was not established by a preponderance of the evidence. If an interrogatory is doubtful in its meaning, such doubt will be resolved in favor of the general verdict. *Jones* v. *Austin* (1901), 26 Ind. App. 399, 59 N. E. 1082; *Haughton* v. *Aetna Life Ins. Co.* (1908), 42 Ind. App. 527, 85 N. E. 125, 85 N. E. 1050.

By the answer to interrogatory No. 66 the jury finds that the injury to appellee was purely accidental. This answer is nullified by answers to other interrogatories which show that the injury was due to the negligence of appellant. From an examination of the answers to interrogatories as a whole it is apparent that the jury did not mean that the injury was "purely accidental," in the sense that it occurred without the fault of anyone.

Appellee was employed as a machinist in appellant's factory. The answers to interrogatories show that he was a man of mature years and was experienced in doing the work in which he was engaged; that it was a part of the duty of appellee to sharpen the drills used by him, and that appellant supplied an emery wheel in the factory for the purpose of enabling him to sharpen his drills thereon; that the emery wheel so supplied was suitable for that purpose and appellee was required by the superintendent to use it; that appellee had, before that time, sharpened metal tools on emery wheels, and knew fully the danger incident to such work,

and that he knew, at the time he was grinding his drill on the emery wheel just before his injury, that such wheel was of coarse construction and that it was revolving very rapidly throwing off particles of the wheel and metal with great force, and that he also knew that such flying particles were dangerous and that he was likely to be injured thereby. The interrogatories also show that at the time of the injury to appellee, appellant maintained in its factory a tool room, and employed therein skilled men, a part of whose duty it was to sharpen metal drills; that the machinery in the tool room which was used for grinding drills, was in good working order at the time of appellee's injury, and that he knew of all these facts. That he had previously had his drills sharpened in this room and knew at and prior to his injury that he could get them sharpened there; that there was nothing to prevent him from having his drill sharpened in this room and that, if he had done so, he would not have been injured. The answers to interrogatories further show: that there was no general rule in the machine shop requiring that tools should be taken to the tool room to be sharpened, and that appellee voluntarily went to the emery wheel to sharpen his drill thereon. Interrogatory No. 91 is as follows: "Should not plaintiff have had the drill sharpened in the tool room?" To which the jury answered "No." From the facts so found by the jury it appears that plaintiff was provided with two means by which his drills could be sharpened in case they required it. He could take them to the tool room to be sharpened, or he could sharpen them himself on the emery wheel provided for that purpose. Had he employed the first means it would have been attended with no danger and he would not have been injured, but he voluntarily adopted the second means, thereby exposing himself to a danger which he well understood and appreciated. The question is Do these facts show as a matter of law that appellee was guilty of contributory negligence? Where a servant has a duty to perform, and there are two

ways or methods of performing it, one of which is
7. safe and the other dangerous, or one of which is
more dangerous than the other, and when he knows
that one way is safe and the other dangerous, or that one
way is more dangerous than the other, it may be stated as
a general rule that he will not be permitted to recover dam-
ages from the master for injuries received as a consequence
if he voluntarily adopts the dangerous way or the more
dangerous of two ways when a safe or a safer way was open
to him. *New York, etc., R. Co.* v. *Hamlin* (1908), 170 Ind.
20, 83 N. E. 343, 15 Ann. Cas. 988; *Consolidated Stone Co.*
v. *Redmon* (1899), 23 Ind. App. 319, 55 N. E. 454; *Cham-
berlain* v. *Waymire* (1904), 32 Ind. App. 442, 68 N. E. 306,
70 N. E. 81; *Gilbert* v. *Chicago, etc., R. Co.* (1903), 123
Fed. 832; *Newport News Pub. Co.* v. *Beaumeister* (1904),
102 Va. 677, 47 S. E. 821; *Schoultz* v. *Eckardt Mfg. Co.*
(1904), 112 La. 568, 36 South. 593, 104 Am. St. 452.

The reason for the rule must be either that the servant,
by voluntarily encountering a known danger, assumes the
risk, or that by so doing he is guilty of contributory
8. negligence as a matter of law. A servant by his
contract agrees to assume all of the usual and ordi-
nary risks incident to the employment which he undertakes.
He also agrees to assume the risk of any known dangers
that may arise during the course of such employment, even
though such dangers are not usually incident thereto. It
has accordingly been held that where a dangerous condi-
tion exists which renders it hazardous for the servant to
perform his duties, and where the servant knows of such
danger and voluntarily encounters it, he can not recover
for injuries thereby occasioned, even though the danger
so encountered was due to the master's negligence. Such
danger being known to the servant was one of the
9. risks assumed by him in his contract of employment,
Care on the part of the servant in encountering the
danger or the want of such care is not material where the

risk is assumed. It matters not how much care the servant may exercise. If the danger which causes the injury is one of the risks assumed, the most extreme care and caution on the part of the servant in encountering such danger, will not avail him or enable him to recover, and it makes no difference whether a safe way or a safer way of doing the work was open to him. In view of the well-settled rule upon the question of assumption of risk, it would

7.  seem that where a servant knows of dangers incident to doing a work in a particular way, and voluntarily undertakes to perform it that way instead of doing it in a safer way which was known to him, he should be denied a recovery for injuries sustained upon the ground that he assumed the risk of the known danger. This reason is given for the holding in some of the decided cases. 5 Thompson, Negligence §5372; *Fritz* v. *Salt Lake, etc., Co.* (1899), 18 Utah 493, 56 Pac. 90; *Richardson* v. *Carbon Hill Coal Co.* (1893), 6 Wash. 52, 32 Pac. 1012, 20 L. R. A. 338. In many of the cases, however, the decision is placed squarely upon the ground of contributory negligence, and it is held that where a servant adopts a means of performing a service which he knows to be dangerous where a safe or a safer means was known and open to him, he will be denied a recovery upon the ground that such facts, as a matter of law, show him to be guilty of contributory negligence. *New York, etc., R. Co.* v. *Hamlin, supra; Consolidated Stone Co.* v. *Redmon, supra; Haven* v. *Pittsburgh, etc., Bridge Co.* (1892); 151 Pa. St. 620, 25 Atl. 311; *Newport News Pub. Co.* v. *Beaumeister, supra.*

If the question is to be determined by an application of the doctrine of assumption of risk, a recovery by the servant must be denied in every case where it appears that the injury resulted from a known danger, unless the case falls within some of the recognized exceptions to the rule, regardless of the care exercised by the servant; but if it is to be determined by an application of the doctrine of con-

tributory negligence, a recovery can not be denied solely on the ground that the injury resulted from a known danger. To bar a recovery on this ground, it must appear that the servant did not exercise reasonable care in view of the known danger and the circumstances of the case.

The question of whether an injured party was guilty of negligence contributing to his injury, depends upon whether he was exercising reasonable care for his own safety at and immediately prior to such injury. Reasonable care is such care as a person of ordinary prudence would exercise under the condition and circumstances of the particular case, and it is usually a question of fact for the jury. Whether the doing of a certain act, or the failure to do it, in a particular way, constitutes due care or the want of such care, should generally be left to the jury in the light of the evidence. It is only in cases where the facts are undisputed and where only a single inference can be reasonably drawn therefrom, that the court can say, as a matter of law, that a certain course of conduct does or does not constitute reasonable care. "It is only when the standard of duty is fixed and certain, or where the measure of duty is defined by law, and is the same under all circumstances, or when the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact." *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545, 547, 46 Am. Rep. 230. If we observe the rules of law above stated, it must follow that, contributory negligence cannot, in all cases, be imputed to a servant from the mere fact that he chooses the more dangerous way or method of performing a duty when a safe method or one less dangerous was open to his choice. If, as a result of the choice, the servant exposes himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising ordinary care for his own safety would have encountered them, and

if there is no room for reasonable minds to differ upon the question, the court may properly say as a matter of law, that such conduct is negligent. In many cases, however, the question must be one of fact for the jury to be determined according to the circumstances of the case from a consideration of the reasons which prompted the servant to act and the care which he used to avoid the injury which befel him. 5 Thompson, Negligence §5374; *Brady* v. *Florence, etc., R. Co.* (1908), 44 Colo. 283, 98 Pac. 321; *Lewis* v. *Texas, etc., R. Co.* (1909), 57 Tex. Civ. App. 585, 122 S. W. 605; *Whitsett* v. *Chicago, etc., R. Co.* (1885), 67 Iowa 150, 25 N. W. 104; *Lewis* v. *Barton Salt Co.* (1910), 82 Kan. 163, 107 Pac. 783; *Daly* v. *American Printing Co.* (1891), 152 Mass. 581, 26 N. E. 135; *Taylor* v. *Felsing* (1896), 164 Ill. 331, 45 N. E. 161; *Florida Central, etc., R. Co.* v. *Mooney* (1898), 40 Fla. 17, 24 South. 148; *Haskel* v. *Cape, etc., Works* (1901), 178 Mass. 485, 59 N. E. 1113, 4 L. R. A. (N. S.) 220; *Atchison, etc., R. Co.* v. *Vincent* (1896), 56 Kan. 344, 43 Pac. 251; *Sayward* v. *Carlson* (1890), 1 Wash. 29, 23 Pac. 830; *Lyon* v. *Charleston, etc., R. Co.* (1908), 84 S. C. 364, 66 S. E. 282.

In the case of *Florida Central, etc., R. Co.,* v. *Mooney, supra,* the court makes use of the following pertinent language: "If in the performance of his duties, two or more methods are open to him, and he has no instructions to pursue one in particular, he necessarily must choose between them, and he cannot be said to have been negligent if he in good faith adopts that which is more hazardous than another, provided the one pursued be one which reasonable and prudent persons would adopt under like circumstances. Any other rule would require the servant to be measured by the standard of very prudent persons, for only extremely cautious persons ordinarily adopt the least hazardous course where both are considered safe and appropriate. For this reason it cannot be held as a matter of law in all cases where a servant is injured while pursuing

a method voluntarily adopted by him, more hazardous than other available methods, he is guilty of contributory negligence, for *non constat* the method pursued may be one which prudent persons would ordinarily exercise under like circumstances. Ordinarily the question of contributory negligence is one of fact for a jury under proper instructions from the court, and it is only in those cases where the conclusions and inferences to be drawn from facts in evidence are indisputable involving a common instinct of mankind—self-preservation—that it becomes a question of law.''

13. In cases where the danger created by the negligence of the master is one that can be assumed by the servant under his contract, and where the servant knowing of such danger voluntarily encounters it, the right of such servant to recover for injuries caused thereby can be determined by an application of the doctrine of assumption of risk. Where such facts appear, without dispute, the court may properly say as a matter of law that the servant assumed the risk; but in a case such as this, where the negligence charged against the master consists of the violation of a duty imposed by statute, the doctrine of assumption of risk can have no application. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319; *Narramore* v. *Cleveland, etc., R. Co.* (1899), 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; *Chamberlain* v. *Waymire, supra; Greenlee* v. *Southern R. Co.* (1898), 122 N. C. 977, 30 S. E. 115, 41 L. R. A. 399, 65 Am. St. 734. Such cases must be determined by an application of the principle of law relating to contributory negligence.

If it appeared from the interrogatories in this case that the master had directed his servants to have their drills and other tools sharpened in the work room, and that the emery wheel in question had not been provided by him for the use of his servants in grinding their tools, and that he never authorized or directed them to use it, and that appellee without any authority from or direction by the mas-

ter had undertaken to sharpen his drill on an emery wheel not intended for such purpose, we think it would be clear that he should not recover. In such a case recovery would be properly denied upon the ground that he was acting without the scope of his employment, but this is not such a case. In this case the facts found by the jury 14. show that the emery wheel in question had been supplied by the master to appellee for the purpose of enabling him to sharpen his drills thereon. The wheel so supplied was suitable for that purpose, and the superintendent had directed appellee to use it. While a tool room was provided in which drills could be sharpened appellee had never been directed to have his drills sharpened there, and there was no general rule to that effect. Evidence may have been introduced to show that it was the custom of the employes in the shop to sharpen their drills upon this wheel. From the answers to interrogatories it appears that appellee was sharpening his drill in one of the ways provided by the master and we cannot say as a matter of law that a person of ordinary prudence would not under the circumstances have undertaken to sharpen his drill on the wheel in question. The question of contributory negligence was one for the jury notwithstanding appellee adopted a method for sharpening his drill which was attended with danger when a safe method could have been employed. The jury by its general verdict has decided that he acted with reasonable prudence in view of the circumstances and the answers to the interrogatories are not in irreconcilable conflict with the general verdict on this point.

Appellant contends that the court should have 15. granted a new trial. The first reason urged is that the verdict is not sustained by sufficient evidence. The argument of appellant is based upon the assumption that the complaint proceeds upon the theory that appellee at the time of his injury was acting in obedience to a particular direction or command of his employer requiring

him to sharpen the particular drill on the emery wheel in question, and that the evidence wholly fails to show any such instruction or requirement on the part of the master. As we construe the complaint, it proceeds upon the theory that appellee was employed by appellant as a machinist and that it was a part of his duties under such employment to keep his drills and other tools sharp by grinding them on the emery wheel in question which had been provided by the master for such purpose. To sustain this complaint it was not necessary for the evidence to show that any specific order or direction was given. The evidence does show that a part of appellee's work was to sharpen the drills with which he worked and that he had always sharpened all his tools in the shop and usually on this particular wheel; that the superintendent was frequently about and saw appellee grinding his tools on this wheel, and that on one occasion the superintendent specially directed appellee to grind a drill on this wheel. We think that the evidence is amply sufficient to show that appellee was acting within the scope of his employment at the time he received his injury.

It is also urged that the evidence shows that appellee was guilty of contributory negligence in choosing a dangerous way of sharpening his drill when a safe way had been provided by the master. We have discussed the legal phase of this question in passing upon the motion for judgment on the answers to interrogatories and it is not necessary to further discuss it here. We may say, however, that the evidence in this case shows that the way adopted by the servant was one of the ways provided by the master or, at least, a way recognized by him as a proper one. The facts and circumstances disclosed by the evidence were such as to warrant the court in submitting to the jury the question, and permitting it to decide whether or not, in view of the evidence, appellee acted with reasonable care and prudence. The fact that the servant chose a dangerous way provided by the master instead of a safe way

or a safer way also provided, is not conclusive upon the question of contributory negligence in a case such as this. This fact should be considered by the jury as bearing upon that question in connection with all of the other facts and circumstances tending to prove or to disprove due care. There is evidence in the record from which the jury was justified in finding that appellee was exercising ordinary care at the time he was injured.

The next contention is that there is no evidence 17. proving or tending to prove that the failure to provide an exhaust fan was the proximate cause of the injury, and that such fact can not be properly inferred from the evidence. The evidence shows that no exhaust fan was provided and that the injury was caused by a particle thrown off from the emery wheel while it was being operated by appellee. The evidence also shows that in the operation of an emery wheel particles are loosened and carried around the wheel and rebound from the front of the wheel upon coming in contact with the instrument being ground, and that an exhaust fan would not carry away all such particles, but would do so to some extent. The claim of appellant is that the evidence fails to show that the particle which produced the injury was one that would have been removed by an exhaust fan had one been provided. The evidence of L. W. Bradley is to the effect that an exhaust fan would take away the dust, the particles that fly off the wheel in grinding, the particles that drop down, and, to a certain extent, the particles which fly around the wheel and rebound. The evidence tends to prove that the injury to appellee's eye was caused by a very minute particle of burnt emery. It was for the jury to say from the evidence whether the particle which caused the injury would have been carried away by an exhaust fan and the injury thus prevented. In view of this evidence we think the jury might properly reach the conclusion that the failure to provide the exhaust fan was the proximate

cause of the injury. Any other holding would destroy the effect of the statute in a case such as this, for the reason that it would be impossible to establish with certainty that a proper exhaust fan would have carried away the particular particle which caused the injury. If it appeared from the evidence in a given case that an injury resulted from one or the other of two causes, for one of which the defendant was responsible, and for the other of which he was not, and if there were no evidence to show that the injury resulted from the cause for which such defendant was responsible rather than the one for which he was not, then the court might properly say that a verdict holding the defendant liable for such injury was not sustained by the evidence and that it was based upon a pure guess. The cases cited by appellant would be controlling in such a case. *Central Union Tel. Co.* v. *Swoveland* (1896), 14 Ind. App. 341, 42 N. E. 1035; *Gagan* v. *City of Janesville* (1900), 106 Wis. 662, 82 N. W. 558; *Hyer* v. *City of Janesville* (1898), 101 Wis. 371, 77 N. W. 729. In this case, however, there is evidence from which the jury may have properly found that the injury resulted from the cause for which defendant was responsible rather than the one for which he was not, and that an exhaust fan if provided, would have carried away the offending particle and prevented the injury. Absolute certainty is not required. The jury was called upon to decide this question according to the weight of the evidence and its finding on this point is not unwarranted. In the case of *Tucker & Dorsey Mfg. Co.* v. *Staley* (1907), 40 Ind. App. 63, 80 N. E. 975, Roby, J., speaking for this court said: "The purpose of the legislature in enacting the statute requiring dangerous machinery to be guarded was to prevent accident. Given, the absence of a proper guard and an injury to an employe coming in contact with a circular saw, the finding that the absence of such guard was the proximate cause of the injury was not unwarranted."

It was assigned as causes for a new trial that certain of

the answers to interrogatories are not supported by 18. any evidence, and this question is presented for decision. Even though it be true that a fact found by an answer to an interrogatory is not sustained by the evidence, this alone would not warrant the court in granting a new trial, unless such fact is one which is necessary to sustain the general verdict. If every fact necessary to sustain the general verdict is supported by evidence a new trial will not be granted because certain answers finding nonessential facts are not sustained by the evidence. It has been said that in cases where the answers to interrogatories were such as to indicate that the jury wholly disregarded the testimony and made answers so manifestly repugnant to each other as to indicate an intention to so distort the evidence as to make a case in favor of one party or the other regardless of the testimony, a new trial should be granted in the interest of justice. *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409, 24 N. E. 137; *Chicago, etc., R. Co.* v. *Cobler* (1909), 172 Ind. 481, 87 N. E. 981; *South Shore Gas, etc., Co.* v. *Ambre* (1909), 44 Ind. App. 435, 87 N. E. 246. In this case the answers to interrogatories are not such as warrant the application of this rule. The facts necessary to support the general verdict are all sustained by evidence, and the facts found by the answers complained of were of such a character that the verdict can stand regardless of such answers. As an illustration, the jury finds in answer to interrogatory No. 23 that the tool room was not, at the time of the injury to appellee, supplied with a suitable appliance for sharpening drills. It makes no difference whether this fact is true or not, as the plaintiff could recover in either event. The other answers complained of are of the same character, and most if not all of such other answers have some evidence upon which they can rest.

It is also claimed in argument that the evidence shows that appellee was negligent in the treatment of his eye and

hence was guilty of contributory negligence which bars a recovery. Subsequent negligence of the injured party which tends to aggravate the injury may be considered as affecting the measure of damages, but it does not bar a recovery of such damages as were occasioned by the original injury. *Standard Oil Co.* v. *Bowker* (1895), 141 Ind. 12, 40 N. E. 128; *City of Goshen* v. *England* (1889), 119 Ind. 368, 21 N. E. 977, 5 L. R. A. 253; *Brown* v. *Marshall* (1882), 47 Mich. 576, 11 N. W. 392, 41 Am. Rep. 728; *Texas, etc., R. Co.* v. *McKenzie* (1902), 30 Tex. Civ. App. 293, 70 S. W. 237.

Appellant objects to several instructions given by the court and to the refusal of the court to give several instructions tendered. By instruction No. 11 the court left it to the jury to say whether or not the particle which caused the injury was or was not of a size to be properly called "dust." The court by this instruction did not attempt to define "dust," nor did it undertake to say as a matter of law just how small or how fine particles of matter would have to be in order to be properly considered as "dust." The instruction is not open to the objection made to it. If appellant desired a definition of dust, he should have prepared and tendered an instruction containing a proper definition of the term. The court did not err in giving to the jury either instruction No. 23 or No. 32 complained of by appellant. We have carefully examined the instructions tendered by appellant and refused, and we are of the opinion that no available error was committed by the court in refusing to give any of these instructions.

Some of these instructions were properly refused because they did not accurately state the law; some were properly refused because the propositions of law contained therein were fully covered by other instructions given; and the answers to interrogatories show that the errors, if any, in refusing the other instructions were harmless.

22.   The court did not err in admitting testimony to prove that it was customary in the machine shop of appellant for the employes to sharpen their drills and other tools on the emery wheel at which appellee was working when he received his injury.   *Whitsett* v. *Chicago, etc., R. Co.* (1885), 67 Iowa 150, 25 N. W. 104; *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250, 30 N. E. 27.

The motion of appellant for a new trial was properly overruled.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 424.  See, also, under (1) 26 Cyc. 1392; (2) 26 Cyc. 1134; (3) 38 Cyc. 1926; (4) 38 Cyc. 1924; (5) 38 Cyc. 1928; (6) 26 Cyc. 1513; 38 Cyc. 1927; (7) 26 Cyc. 1257; (8) 26 Cyc. 1180, 1196; (9) 26 Cyc. 1177; (10) 26 Cyc. 1231; (11) 29 Cyc. 640; (12) 26 Cyc. 1258; (13) 26 Cyc. 1180; (14) 26 Cyc. 1272, 1513; (15) 26 Cyc. 1088; (16) 26 Cyc. 1259; (17) 26 Cyc. 1442; (18) 29 Cyc. 815, 836; 38 Cyc. 1924; (19) 29 Cyc. 532; (20) 38 Cyc. 1688; (21) 38 Cyc. 1711; (22) 26 Cyc. 1441.  As to contributory negligence as a question for the jury, see 8 Am. St. 849.  As to assumption by servant of risk of employment, see 131 Am. St. 437.  As to master's duty to furnish servant safe means and appliances to work with, see 92 Am. Dec. 213; 21 Am. Rep. 579.  On the question of servant's assumption of risk of being injured by dust or splinters caused by the progress of the work, see 25 L. R. A. (N. S.) 364.  As to servant's assumption of risk of injury by splinters flying off hammers, chisels, punches and similar tools, see 30 L. R. A. (N. S.) 800.  For assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272.